

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX: ss.

SUPERIOR COURT
DEPARTMENT OF THE
TRIAL COURT

---

LORRAINE O'RIORDEN,

        Plaintiff,

v.

METROPOLITAN LIFE INSURANCE COMPANY;
BAE SYSTEMS INFORMATION AND ELECTRONIC
     SYSTEMS INTEGRATION INC.
       f/k/a BAE SYSTEMS SANDERS INC.,
     Successor to SANDERS ASSOCIATES;
ABB, INC. as Successor in Interest to BBC BROWN BOVERI;
CBS CORPORATION f/k/a VIACOM, INC., Successor by Merger
     to CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION;
DUREZ PLASTICS AND CHEMICAL,
     formerly a Division of OCCIDENTAL CHEMICAL CORPORATION;
EATON CORPORATION, Individually and as Successor to CUTLER-HAMMER;
GENERAL ELECTRIC COMPANY;
LUCENT TECHNOLOGIES, INC. as Successor to WESTERN ELECTRIC;
PLASTICS ENGINEERING COMPANY;
ROCKWELL AUTOMATION, INC. Independently and as Successor in Interest
     to ALLAN BRADLEY and ROSTONE CORPORATION;
ROGERS CORPORATION;
SCHNEIDER ELECTRIC USA, INC. f/k/a SQUARE D COMPANY, INC.;
UNION CARBIDE CORPORATION;
GEORGIA-PACIFIC CORPORATION;
H. B. FULLER COMPANY;
MIRACLE ADHESIVES CORPORATION;
TILE COUNCIL OF NORTH AMERICA;
JOHNSON & JOHNSON;
IMERYS TALC AMERICA, INC. f/k/a LUZENAC AMERICA, INC.
     f/k/a RIO TINTO MINERALS, INC.;
IMERYS TALC AMERICA, INC. f/k/a LUZENAC AMERICA, INC.
     and CYPRUS TALC CORPORATION (Successor-in-Interest to
     CYPRUS INDUSTRIAL MINERALS, CHARLES MATHIER, INC.,
     METROPOLITAN TALC CO., AMERICAN TALC CO.,
     and RESOURCE PROCESSORS, INC.);
AVON PRODUCTS, INC.;
CYPRUS AMAX MINERALS COMPANY
     (sued as Successor to SIERRA TALC COMPANY);
MINERAL AND PIGMENT SOLUTIONS, INC.
     f/k/a WHITTAKER, CLARK & DANIELS, INC.;
COLGATE-PALMOLIVE COMPANY; and
JOHNSON & JOHNSON CONSUMER INC.

        Defendants.

Civil Action
No.: 17-1121

**THIRD AMENDED
COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

E-SERVICE
62950236
Feb 08 2019
11:38AM
File & ServeXpress

Now comes the plaintiff, by her attorneys, and files the following complaint:

1.    PARTY PLAINTIFF

The plaintiff, Lorraine O'Riorden, a single person, resides at 265 Broadway, Taunton,

Massachusetts 02780.

2.    PARTY DEFENDANTS

2A.    The defendant, Metropolitan Life Insurance Company, (hereinafter

"Metropolitan"), is a foreign corporation which does or has done business in the Commonwealth

of Massachusetts.

2B.    The defendant, BAE Systems Information and Electronic Systems Integration Inc.

f/k/a BAE Systems Sanders Inc., Successor to Sanders Associates, is a foreign corporation,

incorporated under the laws of the State of Delaware, having a principal place of business in the

State of New Hampshire, and has conducted business in the Commonwealth of Massachusetts.

2C.    The defendant, ABB, Inc. as Successor in Interest to BBC Brown Boveri, is a

foreign corporation, incorporated under the laws of the State of Delaware, having a principal

place of business in the State of North Carolina, and has conducted business in the

Commonwealth of Massachusetts.

2D.    The defendant, CBS Corporation f/k/a Viacom, Inc., Successor by Merger to CBS

Corporation f/k/a Westinghouse Electric Corporation, is a foreign corporation having a principal

place of business located in the State of Pennsylvania and has conducted business in the

Commonwealth of Massachusetts.

2E.    The defendant, Durez Plastics and Chemical, Formerly a Division of Occidental

Chemical Corporation, is a foreign corporation incorporated under the laws of the State of New

York, having a principal place of business in the State of Texas, and has conducted business in the Commonwealth of Massachusetts.

2F.    The defendant, Eaton Corporation, Individually and as Successor to Cutler-Hammer, is a foreign corporation, having a principal place of business outside the Commonwealth of Massachusetts, and has conducted business in the Commonwealth of Massachusetts.

2G.    The defendant, General Electric Company, is a New York corporation having a principal place of business outside the Commonwealth of Massachusetts and has conducted business in the Commonwealth of Massachusetts.

2H.    The defendant, Lucent Technologies, Inc. as Successor to Western Electric, is a foreign corporation incorporated under the laws of the State of Delaware, having a principal place of business in the State of New Jersey, and has conducted business in the Commonwealth of Massachusetts.

2I.    The defendant, Plastics Engineering Company, is a foreign corporation, with a principal place of business in Sheboygan, Wisconsin which has conducted business in the Commonwealth of Massachusetts.

2J.    The defendant, Rockwell Automation, Inc. Independently and as Successor in Interest to Allen Bradley and Rostone Corporation, is a Delaware corporation with a principal place of business in the Commonwealth of Pennsylvania and has conducted business in the Commonwealth of Massachusetts.

2K.    The defendant, Rogers Corporation, is a domestic corporation incorporated under the laws of the Commonwealth of Massachusetts, having a principal place of business in the

Commonwealth of Massachusetts, and has conducted business in the Commonwealth of Massachusetts.

2L.    The defendant, <u>Schneider Electric USA Inc. f/k/a Square D Company Inc.</u>, is a Delaware corporation having a principal place of business in the State of Illinois and has conducted business in the Commonwealth of Massachusetts.

2M.    The defendant, <u>Union Carbide Corporation</u>, is a Connecticut corporation with a principal place of business outside the Commonwealth of Massachusetts and has conducted business in the Commonwealth of Massachusetts.

2N.    The defendant, <u>Georgia-Pacific Corporation</u>, is a foreign corporation having a principal place of business in the State of Georgia and has conducted business in the Commonwealth of Massachusetts.

2O.    The defendant, <u>H. B. Fuller Company</u>, is a foreign corporation having a principal place of business in the State of Minnesota, having a principal place of business in the State of Minnesota, and has conducted business in the Commonwealth of Massachusetts.

2P.    The defendant, <u>Miracle Adhesives Corporation</u>, is a New York Corporation having a principal place of business in the State of New York and has conducted business in the Commonwealth of Massachusetts.

2Q.    The defendant, <u>Tile Council of North America</u>, is a New York corporation with a principal place of business outside the Commonwealth of Massachusetts, and has conducted business in the Commonwealth of Massachusetts.

2R.    The defendant, <u>Johnson & Johnson</u>, is a foreign corporation, incorporated under the laws of the State of New Jersey, having a principal place of business in the State of New Jersey, and has conducted business in the Commonwealth of Massachusetts.

4

2S.     The defendant, <u>Imerys Talc America, Inc. f/k/a Luzenac America, Inc. f/k/a Rio Tinto Minerals, Inc.</u>, is a foreign corporation incorporated under the laws of the State of Delaware, with a principal place of business in the State of Colorado, and has conducted business in the Commonwealth of Massachusetts.

2T.     The defendant, <u>Imerys Talc America, Inc. f/k/a Luzenac America, Inc. and Cyprus Talc Corporation (Successor-in-Interest to Cyprus Industrial Minerals, Charles Mathier, Inc., Metropolitan Talc Co., American talc Co., and Resource Processors, Inc.)</u>, is a foreign corporation incorporated under the laws of the State of Delaware, with a principal place of business in the State of Colorado, and has conducted business in the Commonwealth of Massachusetts.

2U.     The defendant, <u>Avon Products, Inc.</u>, is a foreign corporation, incorporated under the laws of the State of New York, having a principal place of business in the State of New York, and has conducted business in the Commonwealth of Massachusetts.

2V.     The defendant, <u>Cyprus Amax Minerals Company (sued as Successor to Sierra talc Company)</u>, is a foreign corporation, incorporated under the laws of the State of Delaware, having a principal place of business in the State of Arizona, and has conducted business in the Commonwealth of Massachusetts.

2W.     The defendant, <u>Mineral and Pigment Solutions, Inc. f/k/a Whittaker, Clark & Daniels, Inc.</u>, is a foreign corporation, incorporated under the laws of the State of Delaware, having a principal place of business in the State of New Jersey, and has conducted business in the Commonwealth of Massachusetts.

2X.     The defendant, <u>Colgate-Palmolive Company</u>, is a foreign corporation, incorporated under the laws of the State of Delaware, having a principal place of business in the State of New York, and has conducted business in the Commonwealth of Massachusetts.

5

2Y.    The defendant, Johnson & Johnson Consumer Inc., is a foreign corporation,

incorporated under the laws of the State of Nebraska, having a principal place of business in the

State of New Jersey, and has conducted business in the Commonwealth of Massachusetts.

As used in this Complaint, the term "defendant" shall include any party defendants

identified in paragraphs 2A-2Y hereof, and their predecessors, which shall include, but is not

limited to, any person, corporation, company or business entity:  which formed part of any

combination, consolidation, merger or reorganization from which any party defendant was

created or was the surviving corporation; whose assets, stock, property, products or product line

was acquired by any party defendant; whose patent rights, trademark rights, trade secrets or

goodwill was acquired by any party defendant; or, which was dominated or controlled by any

party defendant to such an extent that said party defendant was the "alter ego" of said

corporation.

3.    The plaintiff's cause of action arises from the defendants: (a) transacting business

in Massachusetts; (b) contracting to supply and/or sell goods in Massachusetts; (c) doing or

causing a tortious act to be done within Massachusetts; and/or, (d) causing the consequence of a

tortious act to occur within Massachusetts.

4.    The plaintiff, Lorraine O'Riorden, was exposed to defendants' asbestos and

asbestos-containing materials while living with her father, Richard O'Riorden, while he worked

as a circuit board technician from approximately 1966 to the 1970's in the Commonwealth of

Massachusetts and State of New Hampshire, and during the 1970's while living in her home in

the State of New Hampshire while it underwent renovation.

5.    During the period of time set forth in Paragraph 4, the plaintiff, Lorraine

O'Riorden, was exposed to and did inhale and/or ingest asbestos dust, fibers, and particles,

which dust, fibers, and particles came from the asbestos or asbestos-containing products which

were mined, milled, manufactured, fabricated, supplied, sold, and/or specified by the defendant corporations.

6.   The asbestos and asbestos-containing products which the plaintiff, Lorraine O'Riorden, was exposed to were mined, milled, manufactured, fabricated, supplied, sold, and/or specified by the defendant corporations, acting through their duly authorized agents, servants, and employees, who were then and there acting in the course and scope of their employment and in furtherance of the business of the defendants.

7.   At all times pertinent hereto, the defendant corporations were engaged in the business of mining, milling, manufacturing, fabricating, supplying, and/or selling asbestos and asbestos-containing products and/or equipment which included and/or specified asbestos and asbestos-containing products to be used thereon or therein.

8.   At all times pertinent hereto, the asbestos products were products mined, milled, manufactured, fabricated, supplied and/or sold by the defendant corporations and reached the plaintiff, Lorraine O'Riorden, without any substantial change in the condition of the product or products from the time that they were sold.

9.   The plaintiff, Lorraine O'Riorden, was exposed to defendants' asbestos, and/or asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products, and/or raw asbestos fiber of various kinds and grades from approximately the mid-1970's to the present through her personal use of asbestos-containing Cashmere Bouquet, Shower to Shower, Baby Powder and Avon Body Talc in Pelham, New Hampshire; Manchester, New Hampshire; Providence County, Rhode Island; and Taunton, Massachusetts.

10.   During the period of time set forth in Paragraph 9, the plaintiff, Lorraine O'Riorden, was exposed to and did inhale and/or ingest asbestos dust, fibers, and particles,

which dust, fibers, and particles came from the asbestos, and/or asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products, and/or raw asbestos fiber of various kinds and grades which were mined, milled, manufactured, fabricated, supplied and/or sold by the defendants.

11.     The asbestos, and/or asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products, and/or raw asbestos fiber of various kinds and grades which the plaintiff, Lorraine O'Riorden, was exposed to were mined, milled, manufactured, fabricated, supplied, and/or sold by the defendants, acting through their duly authorized agents, servants, and employees, who were then and there acting in the course and scope of their employment and in furtherance of the business of the defendants. At all times pertinent hereto, the defendants were engaged in the business of mining, milling, manufacturing, fabricating, supplying, and/or selling asbestos, and/or asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products, and/or raw asbestos fiber of various kinds and grades (hereinafter referred to as "Defendants' Products"). At all times pertinent hereto, Defendants' Products were mined, milled, manufactured, fabricated, supplied and/or sold by the defendants and reached the plaintiff, Lorraine O'Riorden, without any substantial change in their condition from the time that they were sold. The plaintiff would show that the defective design and condition of Defendants' Products rendered said products unreasonably dangerous, and that Defendants' Products were in this defective condition at the time they were designed by and/or left the hands of the defendants. The plaintiff would show that Defendants' Products were defective in the manner in which they were marketed for their failure to contain or include warnings regarding potential asbestos health hazards associated with the use of or the exposure to Defendants' Products. The plaintiff would show that this market defect rendered Defendants'

Products unreasonably dangerous at the time they were designed or left the hands of the

defendants.  The plaintiff would show that the defendants are liable in product liability including,

but not limited to, strict product liability for the above-described defects.

COUNT I - NEGLIGENCE

12.     The plaintiff realleges the allegations of Paragraphs 1 through 8 of the Complaint,

and by reference, makes them part of this Count.

13.     It was the duty of the defendant corporations to use and exercise reasonable and

due care in the manufacture, fabricating, testing, inspection, production, marketing, packaging

and sale of their asbestos and asbestos-containing products or equipment.

14.     It was also the duty of the defendant corporations to provide detailed and

adequate instructions relative to the proper and safe handling and use of their asbestos and

asbestos products and equipment and to provide detailed and adequate warnings concerning any

and all dangers, characteristics, and potentialities of their asbestos and asbestos-containing

products and equipment.

15.     It was the continuing duty of the defendant corporations to advise and warn

purchasers, consumers, users, and prior purchasers, consumers, and users of all dangers,

characteristics, potentialities and defects discovered subsequent to their initial marketing or sale

of their asbestos and asbestos-containing products and equipment.

16.     Yet, nevertheless, wholly disregarding the aforesaid duties, the defendant

corporations breached their duties by:  (a) failing to warn the plaintiff, Lorraine O'Riorden, of

the dangers, characteristics, and potentialities of their asbestos-containing product or products

when the defendant corporations knew or should have known that exposure to their asbestos-

containing products would cause disease and injury; (b) failing to warn the plaintiff, Lorraine

O'Riorden, of the dangers to which she was exposed when they knew or should have known of

9

the dangers; (c) failing to exercise reasonable care to warn the plaintiff, Lorraine O'Riorden, of what would be safe, sufficient, and proper protective clothing, equipment, and appliances when working with or near or being exposed to their asbestos and asbestos-containing products; (d) failing to provide safe, sufficient and proper protective clothing, equipment and appliances with their asbestos-containing product or products; (e) failing to test their asbestos and asbestos products in order to ascertain the extent of dangers involved upon exposure thereto; (f) failing to conduct such research as should have been conducted in the exercise of reasonable care, in order to ascertain the dangers involved upon exposure to their asbestos and asbestos-containing products; (g) failing to remove the product or products from the market when the defendant corporations knew or should have known of the hazards of exposure to their asbestos and asbestos-containing products; (h) failing upon discovery of the dangers, hazards, and potentialities of exposure to asbestos to adequately warn and apprise the plaintiff, Lorraine O'Riorden, of the dangers, hazards, and potentialities discovered; (i) failing upon discovery of the dangers, hazards, and potentialities of exposure to asbestos to package said asbestos and asbestos-containing products so as to eliminate said  dangers, hazards, and potentialities; (j) failing to provide an adequate warning to those who would foreseeably come into contact with asbestos and asbestos-containing material which was specified, recommended, required or necessarily used in the installation and/or continued maintenance of the defendant's equipment, and, (k) generally using unreasonable, careless, and negligent conduct in the manufacture, fabricating, supply, or sale of their asbestos and asbestos-containing products.

17.    As a direct and proximate result of the unreasonable, careless, and negligent conduct of the defendant corporations, the plaintiff, Lorraine O'Riorden, has developed mesothelioma and other asbestos-related disease, as a result of which the plaintiff, Lorraine O'Riorden, has incurred medical expenses, suffered a dramatic reduction in her life expectancy,

10

incurred great mental and physical pain and suffering, and suffered an impairment in her enjoyment of life, which damages are continuing in nature.

18.     The defendants knew, or with the reasonable exercise of care, should have known of the dangerous characteristics, properties, and potentialities of asbestos and asbestos-containing products.

WHEREFORE, the plaintiff, Lorraine O'Riorden, demands compensatory damages, plus interest and costs.

## COUNT II - BREACH OF EXPRESSED AND IMPLIED WARRANTIES

19.     The plaintiff realleges the allegations of Paragraphs 1 through 18 of the Complaint, and by reference, makes them part of this Count.

20.     The plaintiff, Lorraine O'Riorden, was a person whom the defendants could reasonably have expected to use, consume, or be affected by the defendants' asbestos and asbestos-containing products or equipment within the meaning of Massachusetts General Laws c. 106, §2-318, as the defendants knew or had reason to know that their asbestos-containing products would be used in the insulation or construction industry and that individuals such as the plaintiff, Lorraine O'Riorden, would come in contact with such asbestos materials.

21.     The defendants expressly and impliedly warranted that the asbestos and asbestos-containing products and equipment described above were merchantable, safe, and fit for their ordinary purposes and the particular purposes and requirements of the plaintiff, Lorraine O'Riorden.

22.     The defendants had reason to know of the particular purposes for which their asbestos and asbestos-containing products and equipment would be used.

23.     The plaintiff, Lorraine O'Riorden, relied upon the defendants' skill or judgment in selecting suitable mechanical material, insulation or construction products for safe use.

11

24.     The defendants breached these warranties, in that the asbestos-containing

products and equipment they sold were not merchantable, safe, suitable, or fit for their ordinary

or particular purposes.

25.     As a direct and proximate result of the defendants' breach of warranties, the

plaintiff, Lorraine O'Riorden, has developed mesothelioma and other asbestos-related disease, as

a result of which the plaintiff, Lorraine O'Riorden, has incurred medical expenses, suffered a

dramatic reduction in her life expectancy, incurred great mental and physical pain and suffering,

and suffered an impairment in her enjoyment of life, which damages are continuing in nature.

WHEREFORE, the plaintiff, Lorraine O'Riorden, demands compensatory damages, plus

interest and costs.

COUNT III - CONSPIRACY OR CONCERT OF ACTION:  METROPOLITAN ONLY

26.     The plaintiff realleges the allegations of Paragraphs 1 through 25 of the

Complaint, and by reference, makes them part of this Count.

27.     In addition, during the time period set forth in Paragraph 4, the plaintiff was

exposed to and did inhale and/or ingest asbestos dust, fibers, and particles, which dust, fibers,

and particles came from the asbestos or asbestos-containing products which were mined, milled,

manufactured, fabricated, supplied and/or sold by the Johns Manville Corporation (hereinafter

"Manville") and/or Raymark Industries, Inc. (hereinafter "Raymark").

28.     The defendant, Metropolitan Life Insurance Company, (hereinafter

"Metropolitan") together with Manville, Raymark and other persons and entities, known and

unknown at times relevant hereto, engaged in a conspiracy or concert of action to inflict injury

on the plaintiff, and to withhold, alter, suppress and misrepresent information about the health

effects of asbestos exposure.  One or more of said conspirators did cause tortious injury to the

plaintiff in the course of or as a consequence of the conspiracy or concert of action.  At least the

following enumerated acts were undertaken by the conspirators in the course of and in furtherance of the conspiracy or concert of action.

a.   In 1932, Metropolitan, through its agents, Dr. Anthony Lanza and others, assisted Manville with medical examinations of over 1,000 employees of Manville's factory in Manville, New Jersey. The report of this study shows that a large percentage of the employees suffered from asbestosis including employees not directly involved in the manufacturing process. This 1932 medical survey was not published in the medical literature and, therefore, was unavailable to scientists studying the issue of asbestos disease. Further collaboration between Manville and Metropolitan continued the cover-up.

b.   Beginning in approximately 1934, Manville, through its agents, Vandiver Brown and Attorney J.C. Hobart, suggested to Dr. Anthony Lanza, Associate Director of Metropolitan, (insurer of Manville and Raymark) that Lanza publish a study on asbestosis in which Lanza would affirmatively misrepresent material facts about the health consequences of asbestos exposure. This was accomplished through intentional deletion of Lanza's description of asbestosis as "fatal" and through other selective editing that affirmatively misrepresented asbestosis as a disease process less serious than it actually is and was known to be. As a result, Lanza's study was published in the medical literature in this misleading fashion in 1935. The conspirators were motivated, in part, to effectuate this fraudulent misrepresentation and fraudulent nondisclosure by the desire to influence proposed legislation to regulate asbestos exposure and to provide a defense in lawsuits involving Manville, Raymark and Metropolitan, as insurer. Furthermore, upon information and belief, it is alleged that Metropolitan, at all times relevant

13

hereto, had substantial monetary investments in Manville and Raymark, among other asbestos product manufacturers and distributors.

c.    In 1936, the conspirators or some of them including Manville, Raymark, and other companies entered into an agreement with the Saranac Laboratories in New York.  Under this agreement, these conspirators acquired the power to decide what information Saranac Laboratories could publish about asbestos disease and to control in what form such publications were to occur.  This agreement gave these conspirators power to affirmatively misrepresent the results of the work at Saranac, and also gave these conspirators power to suppress material facts included in any study.  On numerous occasions thereafter, the conspirators exercised their power to prevent Saranac scientists from disclosing material scientific data, resulting in numerous misstatements of fact being made at scientific meetings.

d.    By November 1948, or earlier, Manville, Metropolitan (acting through Dr. Lanza), Raymark, and others decided to exert their influence to materially alter and misrepresent material facts about the substance of research started by Dr. Leroy Gardner at the Saranac Laboratories beginning in 1936.  Dr. Gardner's research involved carcinogenicity of asbestos in mice and also included an evaluation of the health effects of asbestos on humans with a critical review of the then-existing standards of dust exposure for asbestos and asbestos products.

e.    At a meeting on November 11, 1948, these conspirators and others intentionally and affirmatively determined that Dr. Gardner's work should be edited to specifically delete material facts about the cancer-causing propensity of asbestos and the health effects of asbestos on humans and they determined that only an

14

edited version would be published. These conspirators thereby fraudulently misrepresented the risks of asbestos exposure to the public, in general, and to the class of persons exposed to asbestos, including the plaintiff.

f.    As a direct result of influence exerted by the above-described conspirators, Dr. Arthur Vorwald published Dr. Gardner's edited work in the <u>Journal of Industrial Hygiene, AMA Archives of Industrial Hygiene and Occupational Health</u> in 1951 in a form that stressed those portions of Dr. Gardner's work that the conspirators wished stressed, but which omitted references to human asbestosis and cancer, thereby fraudulently and affirmatively misrepresenting the extent of the risks. The conspirators affirmatively and deliberately disseminated this misleading Vorwald publication to university libraries, government officials, agencies and others.

g.    Such action constituted a material affirmative misrepresentation of the material facts involved in Dr. Gardner's work and resulted in creating an appearance that inhalation of asbestos was a less serious health concern than Dr. Gardner's unedited work indicated.

29.    The plaintiff further alleges that Metropolitan, Manville, Raymark and/or their predecessors in interest knowingly agreed, contrived, combined, confederated and conspired among themselves to cause the plaintiff injuries, diseases, and/or illnesses by exposing the plaintiff to harmful and dangerous asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products. Metropolitan, Manville, and Raymark further knowingly agreed, contrived, combined, confederated and conspired to deprive the plaintiff of the opportunity of informed free choice as to whether to use said asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or

asbestos-containing products or to expose themselves to said dangers. In this connection, the plaintiff has sued the Metropolitan Life Insurance Company in its capacity as a conspirator and because it committed tortious act in concert with others pursuant to a common design. Metropolitan, Manville, and Raymark committed the above-described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to Manville's and/or Raymark's asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

30.     In furtherance of said conspiracies, Metropolitan, Manville, and Raymark performed the following overt acts:

a.     for many decades, Metropolitan, individually, jointly and in conspiracy with Manville and Raymark, have been in possession of medical and scientific data, literature and test reports which clearly indicated that the inhalation of asbestos dust and fibers resulting from the ordinary foreseeable use of said asbestos-containing products and/or machinery requiring or calling for the use of asbestos or asbestos-containing products were unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly;

b.     despite the medical and scientific data, literature and test reports possessed by and available to Metropolitan, individually and in conspiracy with Manville and Raymark, fraudulently, willfully and maliciously:

(i)     withheld, concealed and suppressed said medical and scientific data, literature, and test reports regarding the risks of asbestosis, cancer, mesothelioma and other illnesses and diseases from the plaintiff who were using and being exposed to Manville or Raymark asbestos-containing

16

products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(ii)   caused to be released, published and disseminated medical and scientific data, literature, and test reports containing information and statements regarding the risks of asbestosis, cancer, mesothelioma and other illnesses and diseases, which Metropolitan, Manville, and Raymark knew were either incorrect, incomplete, outdated and misleading; and

(iii)   distorted the results of medical examinations conducted upon workers such as the plaintiff who were using asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products and being exposed to the inhalation of asbestos dust and fibers by falsely stating and/or concealing the nature and extent of the harm to which workers such as the plaintiff has suffered; and

(iv)   failing to adequately warn the plaintiff of the dangers to which she was exposed when they knew of the dangers.

c.   by the false and fraudulent representations, omissions, failures, and concealments set forth above, Metropolitan, Manville, and Raymark, individually, jointly, and in conspiracy with each other, intended to induce the plaintiff to rely upon said false and fraudulent representations, omissions, failures, and concealments, to continue to expose themselves to the dangers inherent in the use of and exposure to their asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

Said misrepresentations were false, incomplete, and misleading and constitute negligent misrepresentations as defined by Sections 311 and 522 of the Restatement (Second) of Torts.

31.     The plaintiff reasonably and in good faith relied upon the false and fraudulent representations, omissions, failures, and concealments made by Metropolitan, Manville, and Raymark regarding the nature of their asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

32.     As a direct and proximate result of the conspiracy and concert of action between Metropolitan, Manville and Raymark, the plaintiff has been deprived of the opportunity of informed free choice and connection with the use of and exposure to Manville and Raymark's asbestos and asbestos-containing products, and therefore continued to work with and be exposed to the co-conspirator corporation's asbestos and asbestos-containing products and as a result contracted asbestos-related diseases and other conditions, and/or aggravated pre-existing conditions, as a result of which the plaintiff has suffered a dramatic reduction of her life expectancy, incurred great mental and physical pain and suffering, sustained lost wages and lost earning capacity, incurred medical expenses, and their enjoyment of life has been greatly impaired, which damages are continuing in nature.

WHEREFORE, the plaintiff, Lorraine O'Riorden, demands compensatory damages, plus interest and costs.

## COUNT IV - UNDERTAKING OF SPECIAL DUTY: METROPOLITAN ONLY

33.     The plaintiff realleges the allegations of Paragraphs 1 through 32 of the Complaint, and by reference, makes them part of this Count.

34.     Defendant Metropolitan, through its Policyholders Service Bureau, undertook duties owed by entities which manufactured, sold, supplied, or distributed asbestos-containing products, including Manville and Raymark to the plaintiff by testing of asbestos workers and the conduct of scientific studies.  These duties included, without limitation, as follows:

18

a.  to test fully and adequately for health risks concomitant to the normal and intended use of their products; and

b.  to instruct fully and adequately in the use of their products so as to eliminate or reduce the health hazards concomitant with their normal or intended use.

In undertaking these duties, Metropolitan knew or should have known that it was providing testing services for the ultimate protection of third persons, including the plaintiff.

35.   In both conducting said tests and publishing their alleged results, Metropolitan failed to exercise reasonable care to conduct or publish complete, adequate, and accurate tests of the health effects of asbestos. Metropolitan also caused to be published intentionally false, misleading, inaccurate and deceptive information about the health effects of asbestos exposure. In so acting, Metropolitan breached their special responsibility by failing to exercise reasonable care to protect their undertaking, as described above.

36.   The plaintiff unwittingly but justifiably relied upon the thoroughness of Metropolitan's tests and information dissemination, the results of which Metropolitan published in leading medical journals.

37.   In failing to test fully and adequately for the adverse health effects from exposure asbestos; in delaying the publication of such results; and in falsely editing such results as were obtained; in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product; and in collaborating with entities which manufactured, sold, supplied, or distributed asbestos-containing products, including Manville and Raymark materially to understate the hazards of asbestos exposure, all for pecuniary profit and gain, Metropolitan acted recklessly, wantonly, and in calculated disregard for the welfare of the general public, including the plaintiff.

19

38.     As a direct and proximate result of Metropolitan's failures to conduct or accurately publish adequate test or disseminate accurate and truthful information, after undertaking to do so; (i) the risk of harm to the plaintiff from asbestos exposure was increased, and (ii) the plaintiff contracted asbestos-related diseases and other conditions, and/or aggravated pre-existing conditions, as a result of which the plaintiff has suffered a dramatic reduction of their life expectancy, incurred great mental and physical pain and suffering, sustained lost wages and lost earning capacity, incurred medical expenses, and their enjoyment of life has been greatly impaired, which damages are continuing in nature.

WHEREFORE, the plaintiff, Lorraine O'Riorden, demands compensatory damages, plus interest and costs.

## COUNT V - STRICT LIABILITY DUE TO THE ABNORMALLY DANGEROUS ACTIVITY ON THE PREMISES OF THE DEFENDANT, BAE SYSTEMS INFORMATION AND ELECTRONIC SYSTEMS INTEGRATION INC. f/k/a BAE SYSTEMS SANDERS INC., Successor to SANDERS ASSOCIATES

39.     The plaintiff realleges the allegations of Paragraphs 1 through 38 of the Complaint, and by reference, makes them part of this Count.

40.     The defendant, Bae Systems Information and Electronic Systems Integration Inc. f/k/a Bae Systems Sanders Inc., Successor to Sanders Associates, carried on or permitted to have carried on upon their premises the abnormally dangerous activity of insulating machinery and/or building systems with a toxic substance, to wit, asbestos, in furtherance of their business.

41.     The defendant, Bae Systems Information and Electronic Systems Integration Inc. f/k/a Bae Systems Sanders Inc., Successor to Sanders Associates, knew, or with the reasonable exercise of care, should have known that insulating machinery and/or building systems with asbestos is an abnormally dangerous activity.

42.     The plaintiff, Lorraine O'Riorden, was exposed to and did ingest the asbestos fibers which did escape from the premises of the defendant, Bae Systems Information and Electronic Systems Integration Inc. f/k/a Bae Systems Sanders Inc., Successor to Sanders Associates, by way of the work clothes and person of her father, Richard O'Riorden.

43.     As a direct and proximate result of plaintiff, Lorraine O'Riorden's, exposure and ingestion of asbestos fibers upon the premises, and which escaped from the premises of the defendant, Bae Systems Information and Electronic Systems Integration Inc. f/k/a Bae Systems Sanders Inc., Successor to Sanders Associates, plaintiff, Lorraine O'Riorden, contracted mesothelioma and other asbestos-related disease.  As a result, the plaintiff has incurred medical expenses, suffered a dramatic reduction in her life expectancy, incurred great mental and physical pain and suffering, and suffered an impairment in her enjoyment of life which damages are continuing in nature.

WHEREFORE, the plaintiff, Lorraine O'Riorden, demands that defendant, Bae Systems Information and Electronic Systems Integration Inc. f/k/a Bae Systems Sanders Inc., Successor to Sanders Associates, be held strictly liable for compensatory damages, plus interest and costs.

COUNT VI - NEGLIGENCE OF THE DEFENDANT, BAE SYSTEMS INFORMATION AND ELECTRONIC SYSTEMS INTEGRATION INC. f/k/a BAE SYSTEMS SANDERS INC., Successor to SANDERS ASSOCIATES

44.     The plaintiff realleges the allegations of Paragraphs 1 through 43 of the Complaint, and by reference, makes them part of this Count.

45.     The defendant, Bae Systems Information and Electronic Systems Integration Inc. f/k/a Bae Systems Sanders Inc., Successor to Sanders Associates, owed to all licensees and invitees upon the premises under their ownership or control a duty to use due care to keep the premises in a reasonably safe condition.

46.     The defendant, Bae Systems Information and Electronic Systems Integration Inc. f/k/a Bae Systems Sanders Inc., Successor to Sanders Associates, used, or permitted the use of, asbestos containing insulation products upon the machinery and/or building systems of their premises.

47.     The defendant, Bae Systems Information and Electronic Systems Integration Inc. f/k/a Bae Systems Sanders Inc., Successor to Sanders Associates, knew or should have known that the use of asbestos and asbestos-containing material posed a danger not only to invitees upon the premises, such as the plaintiff's father, Richard O'Riorden, but also to others, such as the plaintiff, Lorraine O'Riorden, who would foreseeably be exposed to and be injured by such asbestos.

48.     The defendant, Bae Systems Information and Electronic Systems Integration Inc. f/k/a Bae Systems Sanders Inc., Successor to Sanders Associates, breached their duty to exercise due care owed to the plaintiff, Lorraine O'Riorden, by specifying and authorizing the use of asbestos and asbestos-containing material on their premises, by failing to take adequate and appropriate measures to ensure that asbestos did not escape from the premises, and by failing to provide an adequate and appropriate warning to workers upon their premises of the dangerous properties of the asbestos with which they worked.

49.     As a direct and proximate result of the defendant's breaches of duties owed to the plaintiff, she was exposed to, did inhale and ingest the fibers of the asbestos materials thereon.

50.     As a direct and proximate result of the plaintiff, Lorraine O'Riorden's exposure, inhalation and ingestion of asbestos fibers from the premises of the defendant, Bae Systems Information and Electronic Systems Integration Inc. f/k/a Bae Systems Sanders Inc., Successor to Sanders Associates, the plaintiff contracted mesothelioma and other asbestos-related disease. As a result, the plaintiff has incurred medical expenses, suffered a dramatic reduction in her life

22

expectancy, incurred great mental and physical pain and suffering, and suffered an impairment in her enjoyment of life which damages are continuing in nature.

WHEREFORE, plaintiff, Lorraine O'Riorden, demands compensatory damages plus interest and costs.

The plaintiff demands a trial by jury on all issues.

DATED:  January 22, 2019                    Respectfully submitted,


                                            Leah M. McMorris, Esq.
                                            (BBO# 681437)
                                            **THORNTON LAW FIRM LLP**
                                            One Lincoln Street, 25th Floor
                                            Boston, MA 02111
                                            (617) 720-1333   FAX (617)720-2445
                                            lmcmorris@tenlaw.com



## CERTIFICATE OF SERVICE

I, Leah M. McMorris, Esq. hereby certify that on this day I electronically served, via File & Serve Express, the foregoing **THIRD AMENDED COMPLAINT**, on all defendants' counsel of record in the above-captioned matter.

DATED:  January 22, 2019

                                            Leah M. McMorris, Esq.