# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

LORRAINE O'RIORDEN,
      Plaintiff,

v.

JOHNSON & JOHNSON, et al.,
      Defendants.

Civil Action
No.: **1:19-cv-10751-ADB**

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER EMERGENCY MOTION TO REMAND

Plaintiff, by and through undersigned counsel and pursuant to 28 U.S.C. § 1447(c) and § 1452, files this Emergency Motion to Remand this state law tort action back to Massachusetts Superior Court. Based on the following, Plaintiff respectfully requests that this Honorable Court grant the instant Motion, reduce Defendants' time to file a response, and immediately remand this case back to state court.

## I.    INTRODUCTION AND STATEMENT OF THE FACTS

Plaintiff Lorraine O'Riorden is suffering from mesothelioma—an "invariably fatal cancer…for which asbestos exposure is the only known cause…" *In re Patenaude*, 210 F.3d 135, 138 (3d Cir.), cert. denied, 531 U.S. 1011 (2000). Plaintiff filed her personal injury asbestos-related action on April 13, 2017 and her First Amended Complaint on February 23, 2018 (*See* First Amd. Compl. at Dkt. No.1-2, Complaint). As detailed in Plaintiff's First Amended Complaint, which is attached as exhibit A to the notice of removal, Ms. O'Riorden had several sources of asbestos exposure. Among them was her use of personal talc products manufactured by Johnson & Johnson and other defendants. Defendant Johnson & Johnson answered the Complaint on May 21, 2018[1]

---

[1] Plaintiff amended her Complaint on February 8, 2019 to also add Johnson & Johnson Consumer Inc.

(Dkt. No.1-3, J&J Answer).  On February 13, 2019, defendant Imerys filed its petition for Chapter 11 bankruptcy.[2]  Prior to removal, this case was pending in the Massachusetts State Court Asbestos Litigation Docket (SMAL) before the Honorable Heidi Brieger, presiding judge over Massachusetts asbestos cases.  On April 18, 2019, as discovery was coming to an end and the case progressing to its December 2019 trial date, in an effort to derail Plaintiff's trial, Johnson & Johnson and Johnson & Johnson Consumer Inc. (collectively "Johnson & Johnson") improperly removed this state court products liability action based on a tenuous connection to a Chapter 11 bankruptcy petition filed by one of its talc suppliers, Imerys Talc America, Inc. ("Imerys" or "Debtor").[3]  Upon information and belief, Johnson & Johnson has similarly removed thousands of state court talc claims across the country.  Pursuant to 28 U.S.C. § 1452 and § 1447(c), immediate remand is warranted.

*First*, the Plaintiff seeks emergent relief because a normal briefing schedule would inevitably delay the progress of her case toward trial. Ms. O'Riorden suffers from an asbestos-related terminal cancer.  Her health is rapidly declining as she has had a recent recurrence of her cancer and is unable to undergo chemotherapy due to damage to her from resulting from previous intense chemotherapy.  For Ms. O'Riorden, every day counts.  If this case is remanded, Ms. O'Riorden will have her day in court before she dies.  Johnson & Johnson has already briefed its jurisdictional argument when it filed an April 18, 2019 motion in the Bankruptcy Court for the District of Delaware to "fix" the venue of this case—and thousands like it—to a consolidated

---

[2] Dkt. No.1, Johnson & Johnson's Notice of Removal, p.1, ¶1.  Imerys also filed a "Notice of Suggestion of Pendency of Bankruptcy and Automatic Stay of Proceedings" on the state court docket on February 14, 2019. (Attached as **Exhibit 1**).  All counsel in the case, including counsel for Johnson & Johnson, received the Notice via the state court e-filing system.

[3] There are in actuality three debtors—Imerys Talc America, Inc., Imerys Talc Vermont, Inc. and Imerys Talc Canada, Inc.—in the Delaware Chapter 11 proceeding, Case No. 19-10289 (LSS) (the "Bankruptcy Case").  (*See*, Dkt. No.1, J&J Notice of Removal, p.1).

proceeding that has not yet even been established.[4] This attempt to improperly delay the Plaintiff's state court personal injury trial should not be entertained.

**Second**, Johnson & Johnson's removal was untimely and procedurally defective. 28 U.S.C. § 1446(b)(3) requires a notice of removal be filed within 30 days after it may be ascertained that the case has become removable. The 30-day requirement applies to the removal of claims related to bankruptcy cases under § 1452.[5] As discussed *infra,* that did not happen here.

**Third**, this Court lacks subject-matter jurisdiction. Plaintiff's claims are not "related to" the pending bankruptcy proceeding filed by Imerys because the claims that Johnson & Johnson point to as a basis for federal jurisdiction are separate and distinct from the Plaintiff's personal injury claims against Johnson & Johnson. The Plaintiff's personal injury claims have no bearing over theoretical contract disputes Johnson & Johnson may have with Imerys. Johnson & Johnson's attempt to gloss over this distinction is fatal to its jurisdictional argument under 28 U.S.C. §1334(b) and *In re Fed.-Mogul Glob., Inc.,* 300 F.3d 368 (3d Cir. 2002).

**Fourth**, even if the Court has "related to" jurisdiction, mandatory abstention under 28 U.S.C. § 1334(c)(2) requires remand, as Plaintiff's claims: (1) do not arise under the bankruptcy code; (2) are based on state law; (3) are not subject to federal jurisdiction absent their purported

---

[4] *See* Dkt. No. 2 in *Dupree v. Johnson & Johnson, et al.,* C/A No. 2:19-cv-1150-MBS, Motion to Fix Venue filed in Delaware federal court.  In the United States District Court for the District of Massachusetts, there are a total of four (4) cases pending before this Court with Plaintiffs represented by Thornton Law Firm, which have been untimely and improperly removed by Johnson & Johnson.  The cases are (1) Rivera (1:19-CV-10747); (2) O'Riorden (1:19-CV-10751) (3) Rodgers (1:19-CV-10754); and (4) Mitchell (1:19-CV-10762).  All of these cases should be remanded to state court for trials scheduled in the coming months.

[5] *In re Interamericas Turnkey Dev. Co.,* 94 B.R. 9, 11 (D.P.R. 1988), ("As no time provision is set from in section 1452 governing bankruptcy removal, the mandatory thirty-day time limit of section 1446 (b) has likewise been held applicable to removal under section 1452.").  *Estate of Scott v. Cervantes*, 2008 U.S. Dist. LEXIS 129198, *4 (C.D. Cal. 2008) (citing *Davis v. Ocwen Fed. Bank*, 2006 U.S.Dist. LEXIS 3221, at *15 (M.D. Ala. 2006) ("By its plain language, the 30-day requirement of § 1446(b) applies to cases removed under § 1452")), attached as **Exhibit 2**; *see Bank of Am., NA v. Koola*, 2016 U.S. Dist. LEXIS 179165, *8-9 (D.S.C. Dec. 28, 2016) (applying the 30-day time limit of § 1446(b) to removal under § 1452) (Gergel, J.), attached as **Exhibit 3**.  It is undisputed that Johnson & Johnson filed its Notice of Removal on April 18, 2019, more than 60 days after receiving Imerys' bankruptcy petition. Johnson & Johnson's Notice of Removal is therefore untimely.

relation to Imerys' bankruptcy; and (4) can be timely adjudicated in the state court as part of the Massachusetts State Court Asbestos Docket. *See Bank of Am., NA v. Koola,* 2016 U.S. Dist. LEXIS 179165, *8-9 (D.S.C. Dec. 28, 2016). This case meets all four requirements, and the Plaintiff requests this Court to immediately remand this case so that trial may commence as scheduled. Moreover, even where mandatory abstention is inapplicable, permissive abstention under 28 U.S.C. § 1334(c) and equitable remand under  28 U.S.C. § 1452(b) are also warranted and appropriate in this matter. Importantly, the first District Court – as far as Plaintiff is aware - to issue an Order on the propriety of Johnson & Johnson's removal of state court talc claims, has remanded them back to state court. *See* Order in *Wagner et al. v. American Art Clay Co., Inc. et al.*, C.A. No. 2:19-cv-03374-PA-MAA (C.D. Cal. April 29, 2019), attached as **Exhibit 4**. If this case is transferred with thousands of other removed cases to the Delaware District Court, Ms. O'Riorden is not likely to live to see an adjudication of her claims. Such an outcome is neither just nor proper. This Court should remand this case to the state court without hesitation so it may proceed to trial as scheduled.

## II. ARGUMENT

### A.   Johnson & Johnson's Notice of Removal Is Untimely and Procedurally Defective.[6]

Debtors filed their petition for bankruptcy on February 13, 2019. Johnson & Johnson filed its Notice of Removal on April 18, 2019, more than 60 days later. Johnson & Johnson's Notice is

---

[6] Johnson & Johnson's Notice of Removal is also procedurally defective - it lists three bases for related-to jurisdiction, set out in one paragraph (no. 20) of the removal notice at p. 7. But as to any explanation, defendant simply references the memorandum of law it filed with its motion in Delaware, buried in an exhibit of 890 pages. *See* Exhibit C of Def.'s Notice. This Court is thus referred to another pleading, in another court, to divine the basis for jurisdiction here. This perfunctory statement fails to satisfy the basic requirement in 28 U.S.C. §1446(a) that the removal notice contain a "short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant …." A notice of removal "must make the basis for the federal court's exercise of removal jurisdiction clear and contain enough information so that the district judge can determine whether removal jurisdiction exists." *Innovative Medical Prods., Inc. v. Felmet*, 472 F.Supp.2d 678, 681 (M.D.N.C. 2006), quoting *West Virginia ex rel McGraw v. Minnesota Mining and Mfg. Co*., 354 F.Supp.2d 660, 668 (S.D. W.Va. 2005). This notice of removal does not meet even the liberal test of §1446(a).

untimely because it was filed more than 30 days after receiving notice of Imerys' bankruptcy petition. A party seeking to remove an action must file a notice of removal within 30 days of receiving the initial pleading in the case. 28 U.S.C. § 1446(b)(1). If, however, the "case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after *receipt by the defendant . . . of* a copy of an amended pleading, motion, order *or other paper from which it may first be ascertained that the case is one which is or has become removable*." *Id.* § 1446(b)(3) (emphasis added). Removal statutes are strictly construed against removal. *See In re Pharm Indus. Average Wholesale Price Litig.,* 431 F. Supp. 2d 98, 105 (D. Mass. 2006) (citing *Danca v. Private Health Care Sys., Inc.,* 185 F.3d 1, 4 (1st Cir. 1999). Courts must narrowly interpret removal jurisdiction because of the significant federalism concerns that are raised by removing proceedings from state court. *Rossello-Gonzalez v. Calderon-Serra,* 398 F.3d 1, 11 (1st Cir. 2004); *Danca v. Private Health Care Sys.,* 185 F.3d at 4. Thus, all doubts are resolved in favor of remand.[7] Johnson & Johnson asserts that its Notice is timely pursuant to a 90-day deadline in Bankruptcy Rule 9027, but it ignores the applicable 30-day deadline in 28 U.S.C. § 1446(b), which applies to § 1452 bankruptcy removals to the district court.[8] *See In re Interamericas Turnkey Dev. Co.,* 94 B.R. 9, 11 (D.P.R. 1988).[9]

---

[7] *See Rossello-Gonzalez,* 398 F.3d at 11 (stating that ambiguity as to source of federal law establishing federal question jurisdiction "ought to be resolved against removal"); *Univ. of Mass. Biologic Labs. v. CSL Behring AG,* 2016 U.S. Dist. LEXIS 151238 (D. Mass. 2016); *In re Pharm Indus. Average Wholesale Price Litig.,* 431 F. Supp. 2d at 105.

[8] While Plaintiff acknowledges the contrary decision in *New Eng. Wood Pellet, LLC v. New Eng. Pellet, LLC,* 2009 DNH 165, 419 B.R. 133 (D.N.H. 2009) that applied the 90-day period in Bankruptcy Rule 9027, the statutory time limit should govern. "Although Fed. R. Bankr. Proc. 9027 provides certain procedures for bankruptcy removal, when the rule and the statute are complementary, no difficulty exists over which one should govern. Where they conflict, the federal removal statute controls over a bankruptcy rule of procedure." Thomas B. Bennett, *Removal, Remand, and Abstention Related to Bankruptcies: Yet Another Litigation Quagmire!,* 27 Cumb. L. Rev. 1037, 1060 (1997). Particularly here, where there was no reason Johnson & Johnson could not have removed this case promptly upon the filing of Imerys' bankruptcy, there is no reason not to follow the statute.

[9] *In re Asbestos Litig.,* 2002 U.S. Dist. LEXIS 3083, at *7-8 (D. Or. Feb. 1, 2002), attached as **Exhibit 5**; *Davis v. Ocwen Federal Bank, FSB,* 2006 U.S. Dist. LEXIS 3221, at *4 (M.D. Ala. Jan. 19, 2006), attached as **Exhibit 6**; *Estate of Scott v. Cervantes,* 2008 U.S. Dist. LEXIS 129198, at *4 (C.D. Cal. July 29, 2008) (Exh. 2); *see Bank of Am., NA v. Koola,* 2016 U.S. Dist. LEXIS 179165, *8-9 (D.S.C. Dec. 28, 2016) (applying the 30-day time limit of §

Removal is generally governed by § 1446. The provision relating to removals based on bankruptcy jurisdiction, § 1452, is silent regarding deadlines for seeking removal. However, in *In re Asbestos Litig.*, the Oregon District Court looked to the Supreme Court for guidance as to whether § 1446 applies to bankruptcy removals, and concluded "[j]ust as the procedural requirements of § 1447 apply to bankruptcy removals under § 1452, so also do the deadlines set in § 1446(b)." 2002 U.S. Dist. LEXIS 3083, at *8-9 (analogizing the Court's opinion in *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 129 (1995) regarding the application of the procedural requirements of § 1447(d) to §1452 bankruptcy removals.).[10]  The 30-day deadline in § 1446 applies to bankruptcy removals, and it trumps the 90-day deadline in Bankruptcy Rule 9027. *In re Asbestos Litig.*, 2002 U.S. Dist. LEXIS 3083, at *9 ("[w]hen a statute and a rule directly conflict, the statute wins"). Thus, Johnson & Johnson's Notice of Removal, filed more than 60 days after Imerys' bankruptcy petition was filed, is untimely.   As such, this case should be remanded to state court.

**B.      This Court Lacks Subject Matter Jurisdiction.**

As the party filing the removal action, Johnson & Johnson has the burden to prove subject matter jurisdiction in a federal court.  *Haber v. Massey,* 904 F. Supp. 2d 136 (D. Mass. 2012), ("The party invoking federal jurisdiction has the burden of establishing that the court has subject matter jurisdiction over the case.") (citing *Amoche v. Guarantee Trust Life Ins. Co.*, 556 F. 3d 41, 48 (1ˢᵗ Cir. 2009); *Danca v. Private Health Care Sys. Inc*, 185 F.3d 1, 4 (1ˢᵗ Cir. 1999), ("[Removing] defendants have the burden of showing the federal court's jurisdiction.").  That

---

1446(b) to removal under § 1452) (Exh. 3).

[10] In *Things Remembered*, the Supreme Court held that §§ 1447(d) and 1452 can coexist in the bankruptcy context since there is no indication Congress intended § 1452 to be the exclusive provision governing removals and remands in bankruptcy – or that Congress intended to exclude bankruptcy cases from § 1447(d).  *Things Remembered*, 516 U.S. at 129.

subject matter jurisdiction is lacking here.  It is foreclosed by straightforward, directly applicable precedent from the Third Circuit, which of course would govern any proceedings in Delaware.

Bankruptcy jurisdiction is governed by 28 U.S.C. § 1334, which confers jurisdiction on the District Court over cases "arising under title 11, or arising in, or related to cases under title 11 [the Bankruptcy Code]." *Bethlahmy v. Kuhlman (In re ACI-HDT Supply Co.)*, 205 B.R. 231, 234-235 (Bankr. 9th Cir. 1997). The Plaintiff's lawsuit against Johnson & Johnson is not a bankruptcy proceeding.  Nor is it an action that could only exist in a bankruptcy proceeding.  Thus, it does not arise under title 11, nor does it arise in title 11.  As a result, subject matter jurisdiction is lacking, and remand is appropriate.

Nonetheless, Johnson & Johnson alleges that the Plaintiff's personal injury lawsuit is "related to" the Imerys bankruptcy case under title 11.  The First Circuit has adopted essentially the same definition of "related to" jurisdiction expressed by the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), finding that a case under title 11 is "related to" the bankruptcy "if its outcome could conceivably have any effect on the bankruptcy estate," here the estates of the three Imerys Debtors in Delaware. *Bos. Reg'l Med. Ctr., Inc. v. Reynolds* (*In re Bos. Reg'l Med. Ctr., Inc.*), 410 F.3d 100, 105 (1st Cir. 2005); *Garcia-Quintero v. Puerto Rico*, No. 96-1770, 1997 U.S. App. LEXIS 6257, at *4-5 (1st Cir. Mar. 11, 1997); *In re G.S.F. Corp.*, 938 F.2d 1467 (1st Cir. 1991); *TD Bank, N.A. v. Sewall*, 419 B.R. 103 (D. Me. 2009); *Messerlian v. A.O. Smith Corp.,* 2009 U.S. Dist. LEXIS 123982 (D.R.I., Dec. 29, 2009) (aff'd *Messerlian v. A.O. Smith Corp.,* 2010 U.S. Dist. LEXIS 5718 (D.R.I., Jan. 21, 2010), attached as **Exhibit 7**. Johnson & Johnson itself, in its motion, relies primarily on, and looks to, the Third Circuit for its grounds for removal, making the *Pacor* decision particularly relevant.[11]  In *Pacor*, plaintiffs alleged injury

---

[11] Dkt. No.1, Johnson & Johnson's Notice of Removal, p.6.

from asbestos used by defendant Pacor, but supplied by Johns-Manville Corp.   Pacor sought indemnity from Manville, which was in bankruptcy. 743 F.2d at 984.   Pacor removed plaintiffs' personal injury claims to federal court, but the district court held that plaintiff's suit against Pacor was not "related to" the Manville bankruptcy. On appeal, the Third Circuit affirmed:

> The primary action between Higgins and Pacor would have no effect on the Manville bankruptcy estate, and therefore is not "related to" bankruptcy within the meaning of [the statutory predecessor to §1334(b)]. At best, it is a mere precursor to the potential third party claim for indemnification by Pacor against Manville. Yet the outcome of the Higgins-Pacor action would in no way bind Manville, in that it could not determine any rights, liabilities, or course of action of the debtor.

*Id.* at 995. *Pacor* has been widely accepted as establishing the test for "related to" jurisdiction.[12]

In the following years, the Third Circuit has reaffirmed and "restated that, in order for a bankruptcy court to have related-to jurisdiction to enjoin a lawsuit, that lawsuit must 'affect the bankruptcy [] without the intervention of yet another lawsuit.'" *See In re W.R. Grace & Co.,* 591 F.3d 164, 173 (3d Cir. 2009) (quoting *In re Federal-Mogul Global, Inc.,* 300 F.3d 368, 382 (3d Cir. 2002)).   In *In re Federal-Mogul Global, Inc.,* 300 F.3d at 372-373, after Federal Mogul Global Inc. (a manufacturer and distributor of asbestos-containing friction products, including brakes) filed for Chapter 11 bankruptcy protection in October of 2001, a number of other so-called Friction Product Defendants sued in thousands of these state court cases, removed plaintiff's claims against them to federal court, arguing they were able to seek indemnification/contribution from the Debtor because these Defendants purchased some of their friction products from the Debtor.  *Id.* at 373. On review of the District Court's order remanding the Friction Products claims, the Third Circuit noted that "the arguments made by Pacor were not dissimilar to those made by Defendants here, but we rejected them" and that "Pacor clearly remains good law in this circuit." *Id.* at 380-381.

---

[12] *See Celotex Corp. v. Edwards,* 514 U.S. 300, 308 n. 6 (1995).

The Third Circuit further observed that the Supreme Court noted that most of the courts of appeal have adopted the *Pacor* test with little or no variation. *Id*. at 381 (citing *Celotex Corp. v. Edwards*, 514 U.S. at 308 n. 6).

The Third Circuit's opinions in *Pacor, Federal-Mogul Global*, and their progeny are particularly relevant to whether the existence of an indemnity or insurance agreement between third-parties and the debtor create "related to" jurisdiction. "An indemnification agreement between a defendant and a non-party bankrupt debtor does not automatically supply the nexus necessary for the exercise of 'related to' jurisdiction." *Federal-Mogul Global, Inc.*, 300 F.3d at 382. Rather, the indemnification right must "accrue upon the filing of the civil action in the proceeding related to the bankruptcy case" and be "clearly established." *Id.* If "the right to indemnification is contingent on a factual finding in the action not involving the bankruptcy debtor" or, as here, "requires the commencement of another lawsuit to establish that right" indemnification will not give rise to "related to" jurisdiction. *Id.*

Shortly after *Federal-Mogul*, the Third Circuit addressed the argument that shared insurance and a "unity of interest" between asbestos manufacturer and supplier gave rise to "related to" jurisdiction and rejected both arguments. *In re Combustion Eng'g, Inc*., 391 F.3d 190, 231 (3d Cir. 2004). As to the former, the court noted that the right to insurance proceeds was disputed and not automatic, rejecting the self-serving statement that "the shared insurance has one cap" and holding that, regardless, it was "doubtful whether shared insurance would be sufficient grounds upon which to find related-to jurisdiction over independent claims against [the non-debtors]." *Id.* at 233. And as to an asserted unity of interest, the court pointed to the long line of Third Circuit opinions rejecting " 'related to' jurisdiction over third-party claims involving asbestos or asbestos-containing products supplied by the debtor when the third-party claim did not directly result in

liability for the debtor." *Id.* at 231. "[U]nity of exposure created by asbestos contained in a common product" was not sufficient to create "related to" jurisdiction. [13] *Id.* at 232. Accordingly, remand is proper.

### 1.    Defendant's Asserted Bases for Related-to Jurisdiction are Insufficient

As noted above, defendant's entire factual basis for jurisdiction is stated in one paragraph in the removal notice, at p. 7. There are three things that are said to support jurisdiction; for elaboration on each one, defendant cites the memorandum in support of its motion to fix venue in Delaware. These three bases of jurisdiction are discussed in turn.

i.    "Supply agreements" that confer "certain contractual rights and obligations between the Debtors and Johnson & Johnson" that arose upon the filing of plaintiff's complaint.

The notice refers to the memorandum at §II.A. This section first cites a 1989 agreement and a 2001 agreement that defendant says "required the Debtors to defend Johnson & Johnson from and against *all* liabilities" (emphasis defendant's). Defendant is wrong. The documents cited in no way establish such limitless indemnification by either Imerys' predecessor or Johnson & Johnson; at best Johnson & Johnson *might* have indemnity claims against Debtors *if* it is held liable on Plaintiff's claims. It is abundantly clear that "the commencement of another lawsuit to establish that right" will be required – the exact type of situation that the court in *Federal Mogul Global Inc.* found does not give rise to "related to" jurisdiction. 300 F.3d at 382.

ii.    Shared insurance proceeds for policies maintained by Johnson & Johnson that may provide coverage to debtors.

_____

[13] There has been a growing reluctance of federal courts to expand its "related to" jurisdiction of bankruptcy court proceedings to third-party asbestos cases. In *Arnold v. Garlock*, 278 F.3d 426 (5th Cir. 2001), the Fifth Circuit refused to transfer to the U.S. Bankruptcy Court for the District of Delaware numerous Texas asbestos cases. The Court held that the defendant's claim of contribution against the Federal-Mogul group bankruptcy pending in Delaware was not "related to" and affirmed remand to Texas state courts.

While an insurance dispute may affect the size of debtors' estate, it does not provide a basis for jurisdiction over plaintiffs' claims against Johnson & Johnson.  Like the alleged shared insurance coverage in *In re Combustion Eng'g, Inc., supra,* 391 F.3d at 231-33, Johnson & Johnson's self-serving description of shared insurance proceeds fails to identify what policies may or may not provide debtor coverage, the years of coverage, applicable limits, and any relevant exclusions or defenses. This is precisely the type of disputed—as opposed to automatic—affect on the bankruptcy proceeding that did not create "related to" jurisdiction. *Id.* at 233 (rejecting the self-serving statement that "'the shared insurance has one cap'" and noting that, regardless, it was "doubtful whether shared insurance would be sufficient grounds upon which to find related-to jurisdiction over independent claims against [the non-debtors]."). [14]

      iii.    <u>An "identity of interest" flowing from the alleged fact that "each bottle of J&J cosmetic talcum powder purchased by the plaintiffs contained the Debtors' talc."</u>

Plaintiff disputes this statement, but in any event, the "identity of interest" necessary for jurisdiction is absent where third-party claims involving asbestos or asbestos-containing products supplied by the debtor "did not directly result in liability for the debtor." *Id.* at 231. Here, Plaintiff's claims against Johnson & Johnson are based solely on its own individual conduct, not on any theory of derivative liability such as successorship, agency, or alter ego liability.

The facts do not support Johnson & Johnson's "related to" contention; the alleged indemnity agreements, alleged shared insurance, and claimed unity of interest all fail to confer "related to" jurisdiction to this Court or a Delaware court.  The <u>potential</u> that Johnson & Johnson

---

[14] The Plaintiff acknowledges that, under similar circumstance, the Court in *Messerlian* determined that an asbestos Plaintiff's personal injury claims could "conceivably" have an impact on a debtor's estate where an indemnity agreement is implicated. 2009 U.S. Dist. LEXIS 123982, at *21. However, as discussed *infra*, the U.S. District Court in Rhode Island in *Messerlian* remanded the case back to state court under the doctrines of abstention and equitable remand. *Id*. at 21, 25 (aff'd *Messerlian v. A.O. Smith Corp*., 2010 U.S. Dist. LEXIS 5718 (D.R.I., Jan. 21, 2010)).

might someday have contribution and indemnity claims against the Debtors, <u>if</u> it is held liable on the Plaintiff's claims, and the possibility of shared insurance as a result, is too tenuous and speculative a basis to confer subject matter jurisdiction in a dispute between two non-debtors that does not involve property of the estate. *See Pacor, Inc.,* 743 F.2d at 995; *In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 382 (3d Cir. 2002); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 231 (3d Cir. 2004); *In re W.R. Grace & Co.*, 591 F.3d 164, 172 (3d Cir. 2009).

## C.     Even if Subject Matter Jurisdiction Were Present, Abstention Would Be Proper.

Johnson & Johnson, in its motion, relies primarily on, and looks to, the Third Circuit for its grounds for removal.[15] Accordingly, if this Court determines that subject matter jurisdiction is present, the Third Circuit requires this Court follow the equitable doctrine of abstention and remand this case.[16]  If mandatory abstention applies, the removal court cannot adjudicate the case and thus has no rational basis to keep it.  A remand back to the state court is the only appropriate response. Even where abstention would be discretionary rather than mandatory, the presence of factors suggesting discretionary abstention pursuant to 28 U.S.C. § 1334(c)(1) may provide sufficient grounds for remand.  *Gregory Rock House*, 339 B.R. at 258 (citing *Premier Hotel Development Group*, 270 B.R. 243, 258 (Bankr. E.D. Tenn. 2001)); *Roddam v. Metro Loans, Inc. (In re Roddam)*, 193 B.R. 971, 981 (Bankr. N.D. Ala 1996) ("The considerations underlying discretionary abstention and remand are the same") (citing *Borne v. New Orleans Healthcare, In*c., 116 B.R. 487, 494 (E.D.La. 1990)).  "The presence of facts supporting abstention, when coupled with related considerations of comity and preference for the resolution of state law questions by

---

[15] Dkt. No.1, Johnson & Johnson's Notice of Removal, p.6.

[16] Since remand can be based upon "any equitable ground," courts often apply the standards applicable to the abstention statute when considering whether remand is appropriate. *Gregory Rock House Randy, LLC. v. New Mexico State Engineer*, 339 B.R. 255, 258 (Bankr. D.N.M. 2006) (citing *Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 775 (10th Cir. BAP 1997) (holding that if abstention is required under 28 U.S.C. § 1334(c)(2), a court should remand the matter to state court)).

state courts, implied in Section 1452(b) 'tips the scales of equity in favor of remanding this case.'"

*Roddam*, 193 B.R. at 981 (internal citations omitted).[17]

### 1.    __Abstention Is Mandatory and Remand Is Appropriate__.

Mandatory abstention is governed by 28 U.S.C. § 1334(c)(2), which provides as follows:

> Upon timely motion of a party in a proceeding based upon a State law claim or
> State law cause of action, related to a case under title 11 but not arising under title
> 11 or arising in a case under title 11, with respect to which an action could not have
> been commenced in a court of the United States absent jurisdiction under this
> section, the district court shall abstain from hearing such proceeding if an action is
> commenced, and can be timely adjudicated, in a State forum of appropriate
> jurisdiction.

28 U.S.C. § 1334(c)(2); *In re Exide Techs.*, 544 F.3d 196, 218 n.14 (3d Cir. 2008). Section

1334(c)(2) addresses situations where a court has no discretion and must abstain.  It pertains only

to non-core proceedings like the present case.[18] A court must abstain and remand a case premised

on "related to" bankruptcy jurisdiction where: (1) a timely motion is made; (2) the proceeding is

based upon a state law claim or state law cause of action; (3) federal courts would not have

jurisdiction absent its relation to a bankruptcy case; and (4) the action can be timely adjudicated

in the state forum. *Id.*; *cf. Bank of Am.,* 2016 U.S. Dist. LEXIS 179165, *8-9.[19]

---

[17] The abstention analysis applies to cases removed to federal court on the basis of bankruptcy jurisdiction. *Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 929 (5th Cir. 1999) (acknowledging some contrary case law but adopting the "majority rule" that removed cases are subject to abstention pursuant to 28 U.S.C. § 1334(c) and noting the lack of any textual support in the statute for a contrary rule).

[18] The terms "core proceeding" and "non-core proceeding" are terms of art.  They originate in the statutory language of 28 U.S.C. § 157(b)(1) and (2).  "Mandatory abstention typically applies to any 'non-core' proceeding based solely on a state law claim or state law cause of action, where such claim can be timely adjudicated in state court. *Haber v. Massey*, 904 F. Supp. 2d 136, 146 (D. Mass. 2012) (citing 28 U.S.C. § 1334(c)(2)). "Core proceedings are those proceedings enumerated in 28 U.S.C. § 157(b)(2), as well as any that arise under Title 11 or arise in a Title 11 case." *Id.* (citing *United States (IRS) v. Paolo (In re Paolo)*, 619 F.3d 100, 102 n. 2 (1st Cir. 2010)). "Conversely, those proceedings 'merely related to the bankruptcy are non-core.'" *Id.* at 147. (internal citations omitted).

[19] The Third Circuit has explained that §1334(c)(2):

> reflects a congressional judgment that a party who wishes to litigate a state claim in a state court,
> but finds himself in a federal court solely because the controversy is related to a bankruptcy, should
> be able to insist upon a state adjudication if that will not adversely affect the bankruptcy proceedings.
> Given that judgment, we can perceive no reason why Congress could have decided to deny

In this case, the Plaintiff asserts state law negligence and product liability claims against Johnson & Johnson for personal injury resulting from exposure to asbestos fibers contained in its cosmetic talc products.  The Plaintiff's lawsuit does not invoke any substantive right provided by title 11.  Nor is it "a proceeding that, by its nature, could arise only in the context of a bankruptcy case."  *See In re Exide Techs.*, 544 F.3d at 218 n.14; *Southmark*, 163 F.3d at 930; *In re Gardner v. United States*, 913 F.2d 1515, 1518 (10th Cir. 1990); *Schultze v. Chandler,* 765 F.3d 945, 948 (9th Cir. 2014).  The Plaintiff's lawsuit against Johnson & Johnson existed before the Debtors filed their Bankruptcy Case in Delaware and would continue to exist if the Bankruptcy Case were dismissed.  If Johnson & Johnson had filed its own bankruptcy case, then the Plaintiff's claim would be against that bankruptcy estate and an action to liquidate that claim would be a core proceeding.[20]  However, Johnson & Johnson did not file its own bankruptcy case, and the Plaintiff asserts no claims against Johnson & Johnson in the Bankruptcy Case that does exist.

The criteria under 28 U.S.C. § 1334(c)(2) are satisfied here, thus requiring the Court to abstain from exercising jurisdiction. [21]  There is no question that this remand motion is timely.

---

mandatory abstention to a party who filed his state claim in a state court, only to have it removed to a federal court.

*Stoe v. Flaherty*, 436 F.3d 209, 214 (3d Cir. 2006).

[20] Johnson & Johnson is trying, improperly, to get the benefits of a Chapter 11 case without the burden of filing one.

[21] The Plaintiffs acknowledge *Haber v. Massey*, 904 F. Supp. 2d 136 (D. Mass. 2012), wherein that court states that although a "personal injury lawsuit is a 'noncore' proceeding . . . pursuant to 28 U.S.C. § 157(b)(4) the mandatory abstention provision does not apply to personal injury claims." *Haber*, 904 F. Supp. 2d at 147.  However, Plaintiffs' respectfully suggest that the *Haber* court's statement regarding personal injury claims in general is based upon a misreading of the statute. While 28 U.S.C. § 157(b)(4) does exclude mandatory abstention for certain non-core proceedings as described by 28 U.S.C. § 157(b)(2)(B), it does not appear that 28 U.S.C. § (b)(2)(B) establishes all personal injury tort claims themselves as non-core proceedings, but only *proceedings to estimate the damages* in an ongoing tort case against the bankruptcy estate, *for purposes of distributing those damages to whom they are owed under the estate's bankruptcy case*:

(2) Core proceedings include, but are not limited to—

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 [11 USCS §§ 1101 et seq., 1201 et seq. or 1301 et seq.] but not the liquidation or estimation of contingent

Plaintiff's claims are Massachusetts state law claims that do not arise under the bankruptcy code.

Further, there is no basis for federal jurisdiction other than the assertion of "related to" bankruptcy

jurisdiction by Johnson & Johnson.  If Johnson & Johnson had thought otherwise, it would have

removed the case to federal court on some other theory of federal jurisdiction long ago.  Finally,

Johnson & Johnson attempts to argue, in its venue motion in Delaware, that the state court cannot

timely adjudicate plaintiffs' claims -  this is an absurd argument. Plaintiff's claims will obviously

be resolved much more quickly in state court than if they are crammed together in Delaware with

thousands of other cases from around the country.  *See In re Exide Techs.*, 544 F.3d at 218 n.14.

As such, § 1334(c)(2) requires abstention and immediate remand.

### 2.   Aside from Mandatory Abstention, Permissive Abstention and Equitable Remand Are Also Appropriate.

Even if this Court were to find that mandatory abstention does not apply to the Plaintiff's

claims, the Court may and should remand the claims against Johnson & Johnson via the doctrines

---

or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11.

28 U.S.C. § 157(b)(2)(B). The First Circuit decision in *Adams v. Cumberland Farms,* 1996 U.S. App. LEXIS 10458 (1st Cir. 1996) indicates that *Haber's* reading is not correct:

> Significantly, personal injury tort and wrongful death claims are afforded special status under the bankruptcy laws. Several express exceptions address and limit the authority of the bankruptcy court over such claims. *See, e.g.,* 28 U.S.C. § 157(b)(2)(B), (O), and § 157(b)(5). For example, **the estimation of unliquidated or contingent personal injury tort claims for the purposes of distribution is explicitly excluded from § 157's list of core proceedings.** *Id.* § 157(b)(2)(B). Moreover, the district court is instructed to order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending or in the district in which the claims arose. *Id.* § 157(b)(5). This special status apparently stems from Congress's recognition that most personal injury tort and wrongful death victims stand in a somewhat different relationship with the bankruptcy debtor because they did not voluntarily enter into dealings with the debtor (and accept the risk of loss) in the same sense as traditional bankruptcy claimants.

*Adams,* 1996 U.S. App. LEXIS 10458 at *7. Taken together, the language above indicates that it is *only damages estimations for purposes of distributing those damages to whom they are owed under the estate's bankruptcy case* that are excluded from the definition of core proceedings and simultaneously disallowed mandatory abstention, and not personal injury claims in general.

of equitable remand and permissive abstention. The plain language of 28 U.S.C. § 1452(b) provides that a court can remand on "any equitable ground." In Judge Anderson's Remand Order on this very scenario involving Johnson & Johnson's removal tactics, the U.S. District Court for the Central District of California noted that "because Section 1452(b) affords 'an unusually broad grant of authority,' any one of the relevant factors may provide a sufficient basis for equitable remand." *See* Exhibit 4.[22] "In addition to equitable remand, a federal court also has the discretion to abstain from hearing a claim related to a bankruptcy in the interests of justice, comity with state courts and/or respect for state law." *Messerlian v. A.O. Smith Corp.,* 2009 U.S. Dist. LEXIS 123982 at *23, n.1 (D.R.I. Dec. 29, 2009) (citing 28 U.S.C. § 1334(c)(1)). "The standards applicable to these statutory mechanisms are "essentially identical" and thus the equitable remand analysis applies with equal force to permissive abstention under Section 1334(c)(1). *Id.* In *Messerlian, i*n evaluating whether to remand on equitable grounds, the U.S. District Court in Rhode Island considered the following factors:

> (1) duplication of judicial resources; (2) uneconomical use of judicial resources; (3) effect of remand on the administration of the bankruptcy estate; (4) case involves questions of state law better addressed by a state court; (5) comity considerations; (6) prejudice to the involuntarily removed parties; (7) lessened possibility of an inconsistent result; and (8) expertise of the court where action originated.

2009 U.S. Dist. LEXIS 123982 at *21-22 (citing *Burdett v. Weiss*, 119 B.R. 385, 388 (D.R.I. 1990)).[23]

---

[22] Remand Order in *Wagner et al. v. American Art Clay Co. Inc. et al.*, C.A. No. 19-03374-PA (C.D. Cal. April 29, 2019) citing, *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 447 B.R. 302, 310 (C.D. Cal. 2010) (quoting *In re Roman Catholic Bishop of San Diego*, 374 B.R. 756, 761 (Bankr. S.D. Cal. 2007).

[23] *See Haber*, 904 F.Supp.2d at 147 (citing to *In re Middlesex Power Equip. & Marine, Inc.* 292 F.3d. 61, 69 (1st Cir. 2002) ("When determining whether the interest of justice, comity, or respect for state law favors abstention [the First Circuit] has expressly mentioned the following factors that other courts have considered: (1) the extent to which state law issues predominate over bankruptcy issues, (2) the presence of a related proceeding commenced in state court or another nonbankruptcy court, and (3) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties.")

In this matter, just as in *Messerlian*, the factors above "weigh heavily in favor of remand." *Id*. In addition to the facts supporting mandatory abstention discussed *supra*, factors in Plaintiff's case are almost identical to those that were in *Messerlian*. – and comity considerations require remand. Johnson & Johnson's removal has split Plaintiff's asbestos injury claims into two cases – with the remainder of Plaintiff's claims still pending in Massachusetts Superior Court. Thus, absent equitable remand, there will be a duplication of judicial effort, an uneconomical use of judicial resources, and prejudice this involuntarily removed Plaintiff in trying the same basic claims in two separate courts, and a risk of inconsistent results. *Id*. at 22-23. Further, the primary argument advanced by Johnson & Johnson as part of its mass removal strategy[24]—that the bankruptcy court will be able to more efficiently adjudicate Plaintiff's state court claims if consolidated in one court—was expressly rejected by courts in the Third Circuit.[25] Plaintiff's claims are all based upon Massachusetts state law – which is better addressed by a Massachusetts state court, and Massachusetts' SMAL docket has substantial expertise in effectively managing its asbestos trial docket. As discussed *supra*, remanding this case to state court for adjudication will not have an effect on the administration of Imerys' bankruptcy estate. All elements for abstention, both mandatory and permissive, and equitable remand apply to this action.[26] This Court cannot adjudicate it. Nor could a federal District Court in Delaware. Thus, keeping the case in the federal system is pointless and desperately unfair to the Plaintiff. Prompt remand to State court is appropriate.

---

[24] As the Court can see, this removal by Johnson & Johnson, as the Court similarly concluded in *Messerlian*, "is primarily about defense strategy and not bankruptcy administration." 2009 U.S. Dist. Lexis 123982, at *24.

[25] *See In re G-I Holdings Inc.*, 2017 U.S. Dist. LEXIS 68891, at *34 (D.N.J. May 5, 2017) (noting the absence of any authority "supporting the proposition that when courts consider the 'effect on the efficient administration of the bankruptcy estate,' courts should actually be examining "judicial efficiency and economy.") (citing *Burke v. Donington, Karcher, Salmond, Ronan & Rainone, P.A.,* 194 B.R. 750, 760 (D.N.J. 1996)), attached as **Exhibit 8**.

[26] *See* 28 U.S.C. § 1334(c)(2); *In re Exide Techs.*, 544 F.3d 196, 218 n.14 (3d Cir. 2008); *Haber*, 904 F.Supp.2d at 147; *Messerlian*, 2009 U.S. Dist. LEXIS 123982 at *21-22.

D.      **What's Old Is What's New.**

The Plaintiff's claims against Johnson & Johnson are not related in any way to the Imerys Bankruptcy Case.  Johnson & Johnson is clearly forum shopping with the goal of detouring the Plaintiff's case to Delaware for years, preventing the Plaintiff from having her day in court in Massachusetts where she lives.  The Plaintiff has a right to a jury trial, which Johnson & Johnson admits.  However, as a practical matter, if Johnson & Johnson can flood the District Court in Delaware with thousands of talc/asbestos cases from around the country, which is exactly the point of the Notice of Removal and associated Motion to Fix Venue, it can defeat that right by overwhelming the court with cases.

Johnson and Johnson did not invent the strategy of glomming on to another entity's asbestos-related bankruptcy case on the basis of alleged cross-claims for contribution and indemnity.  This matter is an exact rerun of proceedings surrounding the Federal-Mogul bankruptcy in the early 2000s.  Richard Skylark was an auto mechanic, who worked on brakes.  Mr. Skylark developed mesothelioma allegedly from exposure to asbestos fibers in the automotive brake assemblies.  On May 8, 2000, Mr. Skylark and Kay Skylark (the "Skylarks") sued several auto part makers in Florida State court for compensation for Mr. Skylark's terminal illness.  The case was set for trial on November 5, 2001. *Skylark v. Honeywell Int'l Inc.,* 2002 U.S. Dist. LEXIS 10554, at \*2 (S.D.Fla. Jan. 25, 2002), attached as **Exhibit 9**.  On October 1, 2001, Federal-Mogul, a maker of auto parts, filed a Chapter 11 bankruptcy in Delaware, due to mounting asbestos liabilities.  On December 17, 2001, Honeywell International, Inc., f/k/a Allied Signal, Inc. ("Allied"), removed the Skylarks' State court lawsuit to the United States District Court in Miami pursuant to 28 U.S.C. § 1452(a) and Federal Rule of Bankruptcy Procedure 9027(a).  Allied argued that because of its cross-claims for contribution and indemnity against Federal-Mogul, the

Skylarks' lawsuit was "related to" the Federal Mogul bankruptcy. *Skylark*, 2002 U.S. Dist. LEXIS

\*3.  The Skylarks filed a motion to remand.

The Court found that Allied's alleged cross claims against Federal-Mogul were not

sufficient to invoke the Court's "related to" jurisdiction under 28 U.S.C. § 1334(b).  The Court

explained:

> Allied's potential claims against Federal-Mogul will have no bearing on the estate
> in bankruptcy unless and until Plaintiff obtains a judgment against Allied.  This
> potential for an effect on the estate is simply too tenuous at this time to support
> removal.  Indeed, "primary actions against solvent defendants are, "at best … a
> mere precursor to the potential third party claim for indemnification.  *Pacor*, 743
> F.2d at 995.  Allied's claims are simply too speculative and premature to support
> removal.

*Skylark*, 2002 U.S. Dist. LEXIS \*8-9.  On that basis alone, the District Court found a lack of

subject matter jurisdiction and determined remand to be proper.  The Court noted that several other

Federal District Courts had reached the conclusion in similar cases.

The Court continued with an analysis of mandatory abstention and found that all four

elements of 28 U.S.C. § 1334(c)(2) were met.  Thus, the Court ruled that "even if it had subject

matter jurisdiction, it would be required to abstain from exercising jurisdiction over this action."

*Skylark*, 2002 U.S. Dist. LEXIS \*11.  The Court went on to analyze permissive or discretionary

abstention under Section 1334(c)(1) and reached the same conclusion:

> The Court finds that the interests of justice require that it abstain from exercising
> jurisdiction over this matter.  Plaintiff Richard Skylark suffers from terminal
> cancer.  His case is ready for trial in state court.  If this case is remanded, he will
> have his day in court before he dies.  However, if this case were transferred with
> thousands of other removed cases to the Delaware Bankruptcy Court, Mr. Skylark
> is not likely to live to see an adjudication of his claims.  This simply would not be
> just or proper.  Accordingly, the Court finds that remand is appropriate.

*Skylark*, 2002 U.S. Dist. LEXIS \*10.

Johnson & Johnson's Notice of Removal and Plaintiff's Motion for Remand are the *Skylark*

case on all fours.  The facts are identical in nearly every detail.  All of the same legal and equitable

considerations apply, and in the same way.  There is no subject matter jurisdiction, as Johnson & Johnson's potential claims for contribution and indemnity are too remote, tenuous, and speculative to impact the administration of the Debtors' estates in Delaware.  Even if there were "related to" jurisdiction, mandatory abstention would apply as a matter of law.  Even if mandatory abstention did not apply, permissive or discretionary abstention would.  The Plaintiff's case is pending before Judge Brieger in the SMAL, and is on the typical trial track.  If the case were sent off to Delaware with thousands of others, Ms. O'Riorden will likely pass away before her case can be heard. Justice requires abstention and swift remand to the Massachusetts Superior Court.

Johnson & Johnson is trying to do now what Pacor tried to do in the Manville bankruptcy case over thirty-five (35) years ago, and what Allied tried to do in the Federal-Mogul bankruptcy case seventeen (17) years ago.  The scheme was wrong then, and it's wrong now.  The result should be the same now as it was then.

### III. CONCLUSION

Ms. O'Riorden suffers from an unpredictable and terminal cancer.  There is no basis for federal jurisdiction here, and the Plaintiff requests this Honorable Court immediately remand this case to the State court so that trial may commence as scheduled.

Dated: May 2, 2019

Respectfully submitted,

/s/ Leah M. McMorris
Andrew S. Wainwright, Esq., BBO# 560060
Andrea Marino Landry, Esq.,  BBO# 663932
Leah M. McMorris, Esq., BBO# 681437
Thornton Law Firm, LLP
One Lincoln St, 25th Floor

Boston, MA 02111
Telephone: (617) 720-1333
Facsimile: (617) 720-2445
lmcmorris@tenlaw.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed through the ECF system on May 2, 2019 and accordingly will be served electronically upon all registered participants identified on the Notice of Electronic Filing.

/s/ Leah M. McMorris
Leah M. McMorris, Esq.