## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

**LORRAINE O'RIORDEN**,

       Plaintiff,

v.

**JOHNSON & JOHNSON et al.**,

       Defendants.

Case No. C.A. No.: 2019-CV-10751

**DEFENDANTS JOHNSON & JOHNSON AND JOHNSON & JOHNSON CONSUMER INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION TO REMAND TO STATE COURT**

Removed from the Commonwealth of Massachusetts Superior Court Middlesex County, Civil Action No. 17-1121

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................. i

INTRODUCTION ........................................................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY .....................................7

ARGUMENT ...............................................................................................................8

    I.     This Court Should Hold the Remand Motion in Abeyance  Until After the Delaware District Court Decides the Venue Motion .................................................8

    II.    J&J Timely and Properly Removed This Action Under Bankruptcy Rule 9027, 28 U.S.C. § 1452, and Applicable Local Rules ...........................................10

    III.   This Court has Subject Matter Jurisdiction as "Related To" Debtors' Chapter 11 Case under 28 U.S.C. § 1334(b) ..........................................................14

    IV.   This Court Should Not Conduct an Abstention Analysis, and Any Such Analysis Disfavors Abstaining Here ......................................................................23

        A.    The Delaware District Court is the Proper Court to Analyze Abstention ...............................................................................................23

        B.    Mandatory Abstention is Inapplicable Here Because 28 U.S.C. § 157(b)(4) Exempts Personal Injury and Wrongful Death Claims ..........23

        C.    This Court Should Decline to Permissively Abstain ................................25

    V.    Considerations Under Equitable Remand Support Denying Plaintiff's Remand Motion ..................................................................................................26

CONCLUSION............................................................................................................30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.A. v. Soc'y of Jesus,*
  No. C09-00262 MJP, 2009 WL 10676663 (W.D. Wash. May 7, 2009)....................................9

*A.H. Robins Co., Inc. v. Piccinin,*
  788 F.2d 994 (4th Cir. 1986) ......................................................... *passim*

*Abbatiello v. Monsanto Co.,*
  No. 06 CIV. 266 (KMW), 2007 WL 747804 (S.D.N.Y. Mar. 8, 2007) ............................24, 29

*Abrams v. Gen. Nutrition Companies, Inc.,*
  No. CIV.A. 06-1820 (MLC), 2006 WL 2739642, (D.N.J. Sept. 25, 2006)............................19

*In re Asbestos Litig.,*
  CV No:01-1790-PA, 2002 U.S. Dist. LEXIS 3083 (D. Or. Feb. 1, 2002) ..............................13

*In re Aztec Indus., Inc.,*
  84 Bankr. 464 (Bankr. N.D. Ohio 1987)................................................................................11

*Beck v. Victor Equip. Co.,*
  277 B.R. 179 (S.D.N.Y. 2002)................................................................................24, 25

*Berry v. Pharmacia Corp.,*
  316 B.R. 883 (S.D. Miss. 2004).............................................................................24, 29

*Calumet Nat'l Bank v. Levine,*
  179 B.R. 117 (N.D. Ind. 1995) ..................................................................................8, 9

*In re Combustion Eng'g, Inc.,*
  391 F.3d 190 (3d Cir. 2004).................................................................16, 19, 21, 22

*Davis v. Ocwen Fed. Bank,*
  No. 3:05cv1229-MHT (WO), 2006 U.S. Dist. LEXIS 3221 (M.D. Ala. Jan.
  19, 2006) .......................................................................................................12

*In re Donington, Karcher, Salmond Ronan & Rainone, P.A.,*
  194 B.R. 750 (D.N.J. 1996) ..................................................................................11

*In re Dow Corning Corp,*
  86 F.3d 482 (6th Cir. 1996) ......................................................... *passim*

*In re Fed.-Mogul Glob., Inc.,*
  282 B.R. 301 (Bankr. D. Del. 2002) .......................................................14, 15, 18

*Fed. Mogul Glob., Inc.*,
　300 F.3d 368 (3d Cir. 2002)........................................................................14, 15, 16

*GSL of Ill, LLC v. Pitt Penn Oil Co., LLC*,
　No. 09cv0571, 2009 U.S. Dist. LEXIS 51428 (W.D. Pa. June 17, 2009) ..............................11

*Haber v. Massey*,
　904 F. Supp. 2d 136 (D. Mass. 2012) ...........................................................................12, 25

*Hopkins v. Plant Insulation Co.*,
　342 B.R. 703 (D. Del. 2006)........................................................................................23, 24

*Hopkins v. Plant Insulation Co.*,
　349 B.R. 805 (N.D. Cal. 2006) ......................................................................................10

*Imerys Talc America, Inc. v. Cyprus Amax Minerals Co.*,
　Adv. Pro. No. 19-50115 (LSS) (Bankr. D. Del.) ..................................................................20

*Jackson ex rel. Jackson v. Johnson & Johnson, Inc.*,
　No. 01-2113 DA, 2001 WL 34048067 (W.D. Tenn. Apr. 3, 2001)....................................9, 13

*In re Lower Bucks Hosp.*,
　488 B.R. 303 (E.D. Pa. 2013), aff'd, 571 F. App'x 139 (3d Cir. 2014) .....................14, 16, 17

*LTC Holdings*,
　587 B.R. 25 (2018)..........................................................................................................17

*Messerlian v. A.O. Smith Corp.*,
　C.A. No. 09-393S, 2009 U.S. Dist. LEXIS 123982 (D.R.I. Dec. 29, 2009) .........................25

*In re Millennium Lab Holdings II, LLC*,
　591 B.R. 559 (D. Del. 2018) ...........................................................................................17

*In re Montreal Maine & Atl. Ry., Ltd.*,
　No. 1:13-MC-00184-NT, 2014 WL 1155419 (D. Me. Mar. 21, 2014) ....................2, 4, 20, 27

*In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig.*,
　496 B.R. 256 (D. Mass. 2013) ...........................................................................2, 23, 24, 27

*In re Nutraquest, Inc.*,
　No. 03-5869 (GEB), 2004 U.S. Dist. LEXIS 29143 (D.N.J. Mar. 5, 2004)................... *passim*

*In re Pacor, Inc.*,
　72 B.R. 927 (Bankr. E.D. Pa. 1987) ...........................................................................11, 12

*Pacor, Inc. v. Higgins*,
　743 F.2d 984, 994 (3d Cir. 1984)...................................................................................4, 16

*In re Pan Am. Corp.*,
    950 F.2d 839 (2d Cir. 1991)...............................................................................25, 27, 28

*In re Riverside Nursing Home*,
    144 B.R. 951 (S.D.N.Y 1992)...................................................................................26

*Royal Indem. Co. v. Admiral Ins. Co.*
    No. 07-2048 (RBK), 2007 U.S. Dist. LEXIS 85991, (D.N.J. Nov. 19, 2007) .......................17

*Estate of Scott v. Cervantes*,
    No. CV 08-03293 MMM, 2008 U.S. Dist. LEXIS 129198 (C.D. Cal. July 29,
    2008) ..................................................................................................................13

*Things Remembered, Inc. v. Petrarca*,
    516 U.S. 124 (1995).................................................................................................12

*In re Twin Labs.*,
    300 B.R. 836 (S.D.N.Y. 2003)..........................................................................2, 9, 28

*In re W.R. Grace & Co.*,
    386 B.R. 17 (Bankr. D. Del. 2008) .................................................................. *passim*

*In re W.R. Grace & Co.*,
    315 B.R. 353 (Bankr. D. Del. 2004) ...........................................................................19

*In re W.R. Grace & Co.*,
    591 F.3d 164 (3rd Cir. 2009) ...........................................................................16, 21

*Whittingham v. CLC of Laurel, LLC*,
    No. 2:06cv11-KS-MTP, 2006 WL 2423104 (S.D. Miss. Aug. 22, 2006) ..........................8, 13

*Williams v. Shell Oil Co.*,
    169 B.R. 684 (S.D. Cal. 1994)...................................................................................26

*In re WorldCom, Inc. Sec. Litig.*,
    293 B.R. 308 (S.D.N.Y. 2003)............................................................................9, 25

**Statutes**

11 U.S.C. § 1101.......................................................................................................7

11 U.S.C. § 1107.......................................................................................................7

11 U.S.C. § 1108.......................................................................................................7

28 U.S.C. § 157 ............................................................................................... *passim*

28 U.S.C. § 1334.................................................................................................... *passim*

28 U.S.C. §1452..................................................................................................... *passim*

28 U.S.C. § 1441.................................................................................................... *passim*

**Other Authorities**

Fed. R. Bankr. P. 9027 ........................................................................................... *passim*

Plaintiff's Emergency Motion to Remand (the "Remand Motion") should be denied because Johnson & Johnson and Johnson & Johnson Consumer Inc. (together, "J&J") properly and timely removed this action under Rule 9027 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and the relevant bankruptcy statutes, 28 U.S.C. §§ 1334 and 1452. And under the controlling bankruptcy statutory framework, 28 U.S.C. §§ 157(b)(5) and 1334(b), the United States District Court for the District of Delaware ("District of Delaware" or "Delaware District Court") has the sole authority to ultimately fix venue in this action and decide whether it, and claims against J&J asserted in approximately 2,400 similar actions that were or will be removed to district courts across the country, should be centrally administered in Delaware as "related to" the chapter 11 cases of J&J's sole talc supplier Imerys Talc America, Inc. and two affiliates, Imerys Talc Vermont, Inc., and Imerys Talc Canada, Inc. (collectively, the "Debtors"). Accordingly, this Court should defer ruling on the Remand Motion until the Delaware District Court issues its ruling on the pending Venue Motion.

## **INTRODUCTION**

Historically, the Debtors have been J&J's sole supplier of the cosmetic talc used in its iconic baby powder products. Prior to removal, this action was one of thousands proceeding in state courts across the country in which plaintiffs allege that exposure to talc supplied by the Debtors and used in J&J's baby powder products caused the plaintiffs' injuries (the "State Court Talc Claims").[1] Beset by an avalanche of personal injury lawsuits, including approximately 90% of the very same State Talc Claims also pending against J&J, the Debtors sought chapter 11

---

[1] The State Court Talc Claims are brought in roughly 2,400 actions, involving approximately 1,400 ovarian cancer actions and 980 non-ovarian cancer actions (predominately mesothelioma-related injuries). The State Court Talc Claims exclude, in the interest of judicial economy, claims on appeal of final judgments or subject to post-trial motions, as well as those in which a trial is ongoing. Notably, in nine of the eleven cases tried over the last year, plaintiffs have failed to convince juries of the merits of their claims, resulting in four defense verdicts and findings of no asbestos in J&J's talcum powder, five hung juries or mistrials, and two plaintiff verdicts.

protection in the United States Bankruptcy Court for the District of Delaware (the "Chapter 11 Case"). In light of Debtors' bankruptcy, and given the Debtors' claims to J&J's insurance and indemnification from J&J, as well as J&J's contractual rights to unlimited indemnity from and shared insurance with the Debtors, a centralized venue for adjudication of the State Court Talc Claims has become necessary to best serve all of the Debtors' creditors, including personal injury plaintiffs like Plaintiff here, as well as J&J.

Courts have long recognized the benefits of using 28 U.S.C. § 157(b)(5) to aggregate nationwide claims—both federal and state, against debtors and non-debtors alike—into one, centralized forum.[2] On April 18, 2019, J&J filed its Venue Motion in the District of Delaware, *see* Dkt No. 1, Ex. C. As set forth in the Venue Motion, 28 U.S.C. § 157(b)(5) vests the Delaware District Court with sole authority to set venue for the State Court Talc Claims. Under 28 U.S.C. § 1334(b), there exists federal subject matter jurisdiction over all personal injury and wrongful death claims that are "related to" the Debtors' estates.

While the Remand Motion fails on the merits, this Court need not issue a merits ruling at this time. The District of Delaware has the sole authority to fix venue in this action. Should that court grant J&J's Venue Motion, venue for this action will be fixed in Delaware; the case will be transferred there, mooting the Remand Motion. In the interest of judicial economy and comity, this Court should hold the Remand Motion in abeyance until the Delaware District Court exercises its

---

[2] *See, e.g.*, *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986) (affirming transfer and centralization of thousands of state and federal personal injury cases against debtors and non-debtor co-defendants); *In re Montreal Maine & Atl. Ry., Ltd.*, No. 1:13-MC-00184-NT, 2014 WL 1155419, at *5, *9–10, *12 (D. Me. Mar. 21, 2014) (transferring product liability claims against non-debtors under § 157(b)(5), finding "related to" jurisdiction based on shared insurance with and "an unconditional right to indemnification from" debtor); *In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig.*, 496 B.R. 256, 264–65 (D. Mass. 2013) (transferring and aggregating cases, including against non-debtors, in a single forum, under § 157(b)(5), in the interests of judicial efficiency and the fair and efficient distribution of the debtors' estate); *In re Nutraquest, Inc.*, No. 03-5869 (GEB), 2004 U.S. Dist. LEXIS 29143, at *42–43 (D.N.J. Mar. 5, 2004) (denying motion to remand and finding "related to" jurisdiction over transferred claims against non-debtors, citing the "strong legislative presumption in favor of transfer under §157(b)(5)") (quoting *In re Twin Labs.*, Inc., 300 B.R. 836, 841 (S.D.N.Y. 2003)).

sole authority and rules on the Venue Motion. Appreciating this point, Chief Judge Colleen McMahon, with the consent of other Southern District of New York judges, *sua sponte* ordered a stay of all State Court Talc Claims removed to the Southern District of New York. *See* Dkt. No. 8, Order, *In re Various Removed State Court Actions Against, Inter Alia, Johnson & Johnson* ("*State Court Talc Actions*"), No. 1:19-cv-03530-JGK (S.D.N.Y. April 30, 2019) (finding it "in the interest of justice for this court to await rulings from the District of Delaware and/or from the Multi-District Panel prior to undertaking any substantive work in connection with any of these removed State Court Talc Actions").[3]

In any event, the State Court Talc Claims, including Plaintiff's claims in this action, are "related to" the Debtors' Chapter 11 Case because supply agreements between the Debtors and J&J contain contractual indemnifications, including indemnifications in favor of J&J, triggered upon the filing of these personal injury claims without regard to ultimate findings on liability. The State Court Talc Claims, including Plaintiff's, are also "related to" the Debtors' Chapter 11 Case because Debtors have claimed rights to approximately **two billion dollars** of J&J's insurance for expenses incurred in defending against the thousands of talc-related lawsuits. *See* Dkt. No. 1, Ex.

---

[3] With reference to Chief Judge McMahon's order, on May 3, 2019, Magistrate Judge A. Kathleen Tomlinson *sua sponte* issued a stay of six months in a removed talc action pending in the Eastern District of New York. *See* Declaration of Daniel P. McCarthy, Esq. at Ex. A, Order, *Mustapick v. A.W. Chesterton, Inc.*, 2:19-cv-02305-JMA-AKT (E.D.N.Y. May 3, 2019) (text order on docket). Similarly, on May 14, 2019, Judge Joanna Seybert *sua sponte* stayed an Eastern District of New York case "until further order from this Court." *See* McCarthy Decl. at Ex. B, Order, *Gavin v. AGCO Corp. et al*, 2:19-cv-02303-JS-SIL (E.D.N.Y. May 14, 2019) (text order on docket). Judge Aaron Polster has also stayed two cases in the Northern District of Ohio. *See* McCarthy Decl. at Ex. C, Order, *Berry v. Clark Indus. Insulation Co.,* 1:19-cv-00890-DAP (N.D. Ohio, May 6, 2019) (text order on docket), Order, *Reardon v. Colgate-Palmolive Co.*, 1:19-cv-00892-DAP (N.D. Ohio May 6, 2019) (text order on docket). After plaintiffs in a District of Massachusetts case filed a motion to remand and J&J filed its opposition, Magistrate Judge M. Page Kelley entered a docket order staying all action in the case pending the District of Delaware ruling. *See* McCarthy Decl. at Ex. D, Order, *Goodnow et al. v. Johnson & Johnson et al.*, 1:19-cv-10761-MPK (D. Mass. May 15, 2019) (text order on docket). While several remand orders have also issued from federal courts since April 29, 2019, they have been largely without in-depth analysis of jurisdictional considerations. The majority also rely primarily on equitable considerations that J&J submits are outweighed by equitable treatment to Debtors' creditors, efficient administration of the Debtors' estates, and preservation of judicial resources. The inconsistent outcomes among the removed claims by federal courts only underscore the need for a stay of consideration of the Remand Motion in deference to the Delaware District Court.

C, Nolan Decl., Ex. 1 (First Day Declaration) ¶ 42. These contractual indemnification claims and claims on shared insurance stand to impact the pool of assets available for Debtors' creditors. Moreover, courts have recognized identity of interest in sale of a single product as additional grounds for "related to" jurisdiction.[4]

The Debtors are also the proper party in interest because they are the sole supplier of the talc at issue. Here, the Debtors exclusively supplied the talc in the talcum powder products sold by J&J. Plaintiff's allegations in this litigation are that the talc supplied by the Debtors and sold by J&J was the cause of her injury. Thus, each State Court Talc Claim plaintiff, including the Plaintiff in this case, draws a straight line from the J&J talcum powder products at issue to the Debtors' talc. Indeed, the fact that Debtor Imerys Talc America, Inc. has been named as a co-defendant in approximately 90% of the talc-related actions against J&J is a testament to this. [5]

In coordination with the filing of the Venue Motion, this action was properly and timely removed under Bankruptcy Rule 9027 and 28 U.S.C. §§ 1334 and 1452. Bankruptcy Rule 9027, which provides 90 days to remove, is specifically applicable to bankruptcy-related removals under § 1452, and thus controls here. Plaintiff's reliance on the 30-day removal statute, 28 U.S.C. § 1446(b), Pl. Mem. at 3-6, applicable to the general removal statue, 28 U.S.C. § 1441, is, therefore, misplaced.

---

[4] *See, e.g.*, *A.H. Robins*, 788 F.2d at 999; *In re Dow Corning*, 86 F.3d 482, 493–94 & n.11 (6th Cir. 1996); Dkt. No. 1, Ex. C, Nolan Decl., Ex. 14 (TKH Hr'g Tr.) at 16:17–25.

[5] "Related to" jurisdiction does not require that a debtor be a co-defendant. *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984) ("The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, *the proceeding need not necessarily be against the debtor or against the debtor's property*.") (emphasis added). This is especially the case where a contractual indemnity and/or shared insurance supports jurisdiction. *See, e.g.*, *W.R. Grace & Co.*, 386 B.R. 17, 23-30 & n.33 (Bankr. D. Del. 2008); *In re Montreal Maine*, 2014 WL 1155419, at *1, *10–12.

Nor has J&J waived its right to remove this action by complying with the state court's pre-trial orders or other pre-trial procedures. Because the automatic stay does not relieve J&J of its obligations to defend itself in state court, 11 U.S.C. § 362(a)(1), J&J continued to meet its obligations until filing its Notice of Removal. Furthermore, waiver is only appropriate in extreme situations, such as when a removing party has sought affirmative relief in state court by filing a counter-claim, or triggered the grounds for removal itself in an attempt to forum shop. J&J's compliance with the state court's orders and procedures cannot constitute a waiver.

With jurisdiction firmly established (and more properly decided by the Delaware District Court), and because mandatory abstention is inapplicable under these circumstances, the only basis to remand this action would be equitable grounds under 28 U.S.C. § 1452(b). Here, these equitable considerations overwhelmingly favor denying the Remand Motion. Remand of this action, like remand of the State Court Talc Claims generally, would only perpetuate the inefficiencies and inconsistencies that J&J's Venue Motion seeks to avoid. These inefficiencies favor removal particularly because the Delaware District Court has authority to effectuate transfer of any State Court Talc Claims removed in connection with the Venue Motion, even if those cases have already been remanded to state court by the time the Venue Motion is decided. *See, e.g.*, McCarthy Decl. at Ex. E, (*In re Imerys Talc America, Inc.*, Case No. 19-mc-00103 (MN) (D. Del. May 9, 2019), Dkt No. 34), Mem. Op. 6 ("[T]he Court may consider the transfer of the cases under § 157(b) regardless of the decisions reached by the state courts on transfer and remand issues . . . ."); Dkt. No. 1, Ex. C, Nolan Decl., Ex. 15 (*Hopkins v. Plant Insulation Co.*, No. 06-cv-298-JJF (D. Del. May 22, 2006)), Mem. Order 3 (noting that "the Court may consider the transfer of this case under Section 157(b) regardless of the decisions reached by the California court on the transfer and remand issues").

Ms. O'Riorden is not alone in wanting a prompt disposition of her claim. There are thousands of plaintiffs around the country seeking their day in court—nearly all of them diagnosed with cancer and many of them with a poor medical prognosis. Plaintiff's counsel knows this well, as they represent many other plaintiffs without state court trial dates because of the thousands of cases currently burdening the state court system. Transferring all of the State Court Talc Claims to the District of Delaware affords plaintiffs collectively—not just those with a current trial date— the best chance for an efficient adjudication of their claims. The District of Delaware, under the bankruptcy venue statute invoked here, has more resources at its disposal to facilitate this adjudication, such as by holding a single general causation hearing relating to all the State Court Talc Claims, setting bellwether trials representative of all State Court Talc Claims, and remanding cases to federal venues around the country for expedited trials if appropriate. Indeed, J&J's Venue Motion stands to benefit all of Debtors' mass tort creditors, who are equally desirous of their day in court.[6]

---

[6] *Cf., e.g.*, *W.R. Grace & Co.*, 386 B.R. at 35–36 (expanding a preliminary injunction to bar prosecution of pending actions against non-debtor railroad over whom the court found "related to" jurisdiction, and weighing the alleged hardship to "sick and dying" claimants caused by expanding the injunction, but finding that "[t]he diversion of time, effort and resources that would be required if the [actions] proceed would further delay the reorganization process, and implicate estate property," and noting that the parties were permitted to pursue testimony preservation procedures upon application). For those few plaintiffs like Ms. O'Riorden who allege their *in extremis* condition puts them at risk of missing their trial if their claims are transferred, J&J readily offers *de bene esse* depositions. Moreover, if one accepted Plaintiff's argument that the particular facts of her case warranted remand rather than removal and transfer to one efficient forum subject to § 157(b)(5), it would follow that multidistrict litigation of such claims is improper for the same reason. Yet over 80 percent of the talc cases against J&J have already been efficiently consolidated in an MDL. *See* Case No. 3:16-md-02738 (D.N.J.). By establishing this MDL, the federal courts have effectively rejected the argument that plaintiff specific circumstances require thousands of cases to be decided separately, and potentially inconsistently. This consideration should not override the purposes of § 157(b)(5) and the orderly and efficient operation of the courts.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On February 13, 2019, the Debtors filed voluntary chapter 11 petitions, which are being jointly administered in the reorganization proceedings styled: *In re: Imerys Talc America, Inc., et al.*, Case No. 19-10289-LSS, in the United States Bankruptcy Court for the District of Delaware.[7]

On April 18, 2019, J&J filed its Venue Motion in the District of Delaware. *See In re Imerys Talc America, Inc.*, Case No. 19-mc-00103 (MN), Dkt No. 1 (D. Del.). The Venue Motion and supporting papers were submitted to this Court with J&J's Notice of Removal. *See* Dkt. No. 1. The primary purpose of the Venue Motion is to centralize approximately 2,400 of claims against J&J— all of which allege that the Debtors' talc caused personal injury and/or wrongful death—in one forum, i.e., the Delaware District Court. *See id*.

Under Bankruptcy Rule 9027(a)(1), the deadline to remove prepetition claims related to the Debtors' bankruptcy estates is "90 days after the order for relief under the Code." Fed. R. Bankr. P. 9027(a)(1); 28 U.S.C. § 1452(a). Therefore, the removal deadline is May 14, 2019. On April 18, 2019—nearly a month before the removal deadline, J&J filed a notice of removal in this Court. *See* Dkt. No. 1 (the "Notice of Removal"). In accordance with Bankruptcy Rule 9027(b), J&J promptly served written notice of the removal on Plaintiff's counsel of record. On April 19, 2019, consistent with Bankruptcy Rule 9027(c), J&J filed a copy of the Notice of Removal with the clerk of the Commonwealth of Massachusetts Superior Court, Middlesex County (the "State Court") from which this case was removed. A snapshot of the electronic docket is attached hereto as **Ex. F** to the Declaration of Daniel P. McCarthy. As of that filing, "[t]he parties shall proceed

---

[7] Since the Chapter 11 Case was commenced, the Debtors have remained as debtors in possession under 11 U.S.C. § 1101 and have the rights, powers, and duties set out in 11 U.S.C. §§ 1107 and 1108.

no further in that court unless and until the claim or cause of action is remanded." Fed. R. Bankr. P. 9027(c).

On April 30, 2019, J&J filed in the District of Delaware an Emergency Motion for Provisional Transfer under 28 U.S.C. § 157(b)(5). *See In re Imerys Talc America, Inc.*, Case No. 19-mc-00103 (MN), Dkt Nos. 12-13. The Delaware District Court denied that motion on May 9, 2019, finding emergency transfer unnecessary in advance of a decision on the merits of the Venue Motion, on which briefing will be complete by May 23, 2019. *See id.* Dkt. Nos. 34-35. On May 2, 2019, Plaintiff filed an Emergency Motion to Remand. (Dkt. No. 7).

## **ARGUMENT**

### I.      This Court Should Hold the Remand Motion in Abeyance Until After the Delaware District Court Decides the Venue Motion

This Court need not expend judicial resources deciding the Remand Motion while the Venue Motion is pending before the Delaware District Court. A speedy decision from the District of Delaware granting the Venue Motion would fix venue for the State Court Talc Claims in Delaware, effectively transferring this action to the District of Delaware.

28 U.S.C. § 157(b)(5) instructs "that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, *as determined by the district court in which the bankruptcy case is pending*." (emphasis added). In cases involving transfer and remand motions, courts have held that the "*transferee*" court under section 157(b)(5) is the proper forum to decide the remand motion. *See, e.g., Whittingham v. CLC of Laurel, LLC*, No. 2:06cv11-KS-MTP, 2006 WL 2423104, at *1 (S.D. Miss. Aug. 22, 2006) ("Plaintiff has filed a Motion for Remand and Request for this Court to abstain. This issue needs to be considered as a part of the big picture. The District Court in Georgia [with jurisdiction over the bankruptcy] should consider this issue."); *Calumet*

*Nat'l Bank v. Levine*, 179 B.R. 117, 123 (N.D. Ind. 1995) (staying all proceedings while debtor-defendant pursued section 157(b)(5) motion and deferring ruling on pending motions because "whichever court ultimately takes the case should be the one that rules on the remaining argument"); *cf. Jackson ex rel. Jackson v. Johnson & Johnson, Inc.*, No. 01-2113 DA, 2001 WL 34048067, at *6 (W.D. Tenn. Apr. 3, 2001) (holding that transferee court in multidistrict litigation is "a proper authority to decide the remand motion" and "[t]he general rule is for federal courts to defer ruling on pending motions to remand in [multidistrict litigation]" until after the case is transferred). Deference to the district in which the bankruptcy is administered is consistent with the language and purpose of section 157(b)(5). *See Calumet*, 179 B.R. at 121 ("[A] purpose behind section 157(b)(5) is making it possible for a single forum to oversee the many claims and proceedings that might arise in or affect a bankruptcy case.").

Should the Delaware District Court find that it has jurisdiction, remand will be inappropriate unless *that* court chooses, against a "strong legislative presumption in favor of transfer," to abstain following abstention analyses. *In re Nutraquest, Inc.*, No. 03-6859 (GEB), 2004 U.S. Dist. LEXIS 29143, at *43 (D.N.J. Mar. 5, 2004) (quoting *In re Twin Labs.*, 300 B.R. 836, 841 (S.D.N.Y. 2003)). Accordingly, it is the Delaware District Court rather than this Court that should engage in any abstention analyses or otherwise consider remand issues in the first instance.[8] For this reason, courts routinely defer ruling on motions to remand until after the court vested with the authority to fix venue under section 157(b)(5), here the District of Delaware, decides whether the case would be transferred. *See, e.g.*, *A.A. v. Soc'y of Jesus,* No. C09-00262 MJP, 2009 WL 10676663, at *2 (W.D. Wash. May 7, 2009) (declining to rule on motion to remand

---

[8] As acknowledged by Plaintiff, Pl. Mem. at 4, the permissive abstention analysis under 1334(c)(1) is essentially identical to equitable remand analysis under section 1452(b). *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 334 (S.D.N.Y. 2003). Accordingly, the same equitable considerations that overwhelmingly support denial of the Remand Motion under section 1452(b), also disfavor permissive abstention under section 1334(c)(1).

9

challenging "related to" jurisdiction "[i]n order to give due comity and deference to the [Bankruptcy Court for the District of Oregon before which a § 157(b)(5) motion was pending] in handling [a debtor's] bankruptcy"); *Hopkins v. Plant Insulation Co.*, 349 B.R. 805, 808 n.2 (N.D. Cal. 2006) (granting remand motion *after* decision was issued by district court where bankruptcy was pending on whether to fix venue in central location).

Further to this point, under § 157(b)(5), the Delaware District Court may fix venue for this action, even if it has already been remanded. *See* McCarthy Decl. at Ex. E, (*In re Imerys Talc America, Inc.*, Case No. 19-mc-00103 (MN) (D. Del. May 9, 2019), Dkt No. 34), Mem. Op. 6 ("[T]he Court may consider the transfer of the cases under § 157(b) regardless of the decisions reached by the state courts on transfer and remand issues . . . ."); Dkt. No. 1, Ex. C, Nolan Decl., Ex. 15 (*Hopkins v. Plant Insulation Co.*, No. 06-cv-298-JJF (D. Del. May 22, 2006)), Mem. Order 3 (noting that "the Court may consider the transfer of this case under Section 157(b) regardless of the decisions reached by the California court on the transfer and remand issues"); *see also A.H. Robins*, 788 F.2d at 998 (affirming district judge's order transferring claims, *wherever pending*, to a single forum) (emphasis added); *In re Dow Corning*, 86 F.3d at 493 (citing with approval the order entered in *A.H. Robins*). Thus, in the interests of comity, efficiency, and achieving uniform outcomes by coordinated judicial proceedings, this Court should await the District of Delaware's forthcoming decision on the Venue Motion before issuing a ruling on the Remand Motion.

## II.   J&J Timely and Properly Removed This Action Under Bankruptcy Rule 9027, 28 U.S.C. § 1452, and Applicable Local Rules[9]

Plaintiff's claims against J&J are "related to" the Chapter 11 Case, and thus removed under 28 U.S.C. § 1452. As the majority of courts have held, "the time limits stated in Bankruptcy Rule

---

[9] Plaintiff's argument that J&J's removal is procedurally defective must fail. J&J provided a one paragraph statement of three bases for related-to jurisdiction, which satisfies a "short and plain statement of the grounds for removal" as

9027 should control with regard to Section 1452." *GSL of Ill, LLC v. Pitt Penn Oil Co., LLC*, No. 09cv0571, 2009 U.S. Dist. LEXIS 51428, at *4 (W.D. Pa. June 17, 2009); *see also In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.*, 194 B.R. 750, 756 (D.N.J. 1996) ("The majority of courts have upheld the applicability of Bankruptcy Rule 9027 to Section 1452 and enforce a ninety day time limitation.") (citing *Textron Investment Mgmt. Co. v. Struthers Thermo-Flood Corp.*, 169 B.R. 206, 210 (D. Kan. 1994); *Plowman v. Bedford Fin. Corp.,* 218 B.R. 607, 613 n.13 (Bankr. N.D. Ala. 1998) ("The majority position is it is Fed. R. Bankr. P. 9027 [that controls]."); *In re Klober*, 142 B.R. 300, 301 (Bankr. E.D. Ark. 1992); *In re Pacor, Inc.*, 72 B.R. 927, 930-31 (Bankr. E.D. Pa. 1987). The majority rationale is based upon the view that "Rule 9027 was *not* so tied to the former removal statute, § 1478, that the repeal of § 1478, and the subsequent enactment of § 1452, caused the implicit repeal of Rule 9027." *Id.* at 756 (quoting *In re Aztec Indus., Inc.*, 84 Bankr. 464, 469 (Bankr. N.D. Ohio 1987)). In other words, the deadlines set forth by Bankruptcy Rule 9027 remain in effect and control here.

To elaborate on this issue, the court in *In re Pacor, Inc.*, 72 B.R. 927, 930–31 (Bankr. E.D. Pa. 1987), succinctly stated:

> When Congress enacted 28 U.S.C. § 1452, its intent was simply to alter the statutory reference from bankruptcy court to district court. S. Rep. No. 98-55, 98th Cong., 1st Sess. 43 (1983). It expressed no desire to alter the procedure or time periods set out in Rule 9027 which were then in effect. Indeed, the proposed amendments to Bankr. Rule 9027 maintain the time limits currently existing in this rule and alter the procedure by having the removed application filed with the district court clerk. Moreover, since § 1446 makes no provision for removal by a plaintiff, while § 1452 continues to allow plaintiffs to remove, it is difficult to see how Rule 9027 could be supplanted by § 1446 unless one also supplants § 1452 by § 1441.

---

cited by Plaintiff. Pl. Mem. at 4. Further, all of the supporting and relevant documents relating to J&J's removal were submitted to this Court, regardless of where the documents were originally filed.

Thus, Plaintiff's erroneously rely on 28 U.S.C. § 1446, which outlines procedure under the general removal statute, 28 U.S.C. § 1441, to suggest J&J's removal of this action was untimely. Pl. Mem. 4-6. Plaintiff claims that "[t]he 30-day deadline in § 1446 applies to bankruptcy removals, and it trumps the 90-day deadline in Bankruptcy Rule 9027." Pl. Mem. at 6. Plaintiff's assertion finds no support in the leading case law. In rejecting the minority view proposed by Plaintiff, the court in *Pacor* observed that courts following the minority view "simply neglect[] to take into account the significant differences between removal under § 1452 and § 1441" as well as "the bankruptcy policies implicit in those differences." *In re Pacor, Inc.*, 72 B.R. at 931.[10] Specifically, to effectuate those policies, "Congress intended to allow the rule making process to establish the removal procedure for bankruptcy related proceedings from other courts." *Id.*; *see also id.* at 930 ("The removal procedures and time deadlines established by this rule are different from those set out in 28 U.S.C. §§ 1441, 1446 because of *unique concerns and policies* embodied in the Bankruptcy Code.") (emphasis added) (citing the Advisory Committee Notes to Bankruptcy Rule 9027).

The United States District Court for the First Circuit agrees. *See Haber v. Massey,* 904 F. Supp. 2d 136 at *140 (D. Mass. 2012) ("[S]ection 1452, the bankruptcy removal statute, does not impose a thirty-day time limit on removal; rather, courts have determined that a number of different deadlines govern such removal as set forth in Rule 9027 of the Federal Rules of Bankruptcy Procedure."); *New England Wood Pellet, LLC v. New England Pellet, LLC,* 419 B.R. 133 at *146 (D.N.H. 2009) ("§1452 does not impose a thirty-year time limitation on removal, but a number of

---

[10] "Congress, when it added § 1452 to the Judicial Code chapter on removal of cases from state courts—a chapter now comprising 28 U.S.C. §§ 1441–1452—meant to *enlarge*, not rein in, federal trial court removal/remand authority for claims related to bankruptcy cases." *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 131–32 (1995) (Ginsburg, J. concurring) (emphasis added). Notably, although cited by the Plaintiff, *Things Remembered* does not address the interaction between the timelines set forth in Bankruptcy Rule 9027 and 28 U.S.C. § 1446.

different deadlines imposed by Rule 9027 of the Federal Rules of Bankruptcy Procedure.") In recognition of the unique concerns and policies underlying the Bankruptcy Code—protecting the Debtors' estates and creditors rights—this Court should likewise adopt the majority rule.[11] Adopting the minority view, on the other hand, would contravene standard bankruptcy practice. *Cf., e.g.*, *In re Imerys Talc America, Inc.*, No. 19-10289 (LSS), Dkt. No. 93 (Bankr. D. Del.) (moving under Bankruptcy Rule 9027 to extend the removal deadline without reference to 28 U.S.C. § 1446).

In any event, courts faced with similar procedural postures have held that the transferee court—here, the District of Delaware—should decide motions to remand. *See Whittingham*, 2006 WL 2423104, at *1 ("Plaintiff has filed a Motion for Remand and Request for this Court to abstain. This issue needs to be considered as a part of the big picture. The District Court in Georgia [with jurisdiction over the bankruptcy] should consider this issue."); *cf. Jackson ex rel. Jackson v. Johnson & Johnson, Inc.*, No. 01-2113 DA, 2001 WL 34048067, at *6 (W.D. Tenn. April 3, 2001) (holding that transferee court in multidistrict litigation is "a proper authority to decide the remand motion" and "[t]he general rule is for federal courts to defer ruling on pending motions to remand in [multidistrict litigation]" until after the case is transferred). Thus, to the extent that the law

---

[11] The cases the Plaintiff cites to the contrary do not alter this analysis. *See* Pl. Mem. at 5. For example, *Estate of Scott v. Cervantes*, No. CV 08-03293 MMM (CWx), 2008 U.S. Dist. LEXIS 129198, at *4 (C.D. Cal. July 29, 2008), blindly crops language—"By its plain language, the 30-day requirement of § 1446(b) applies to cases removed under § 1452"—from *Davis v. Ocwen Fed. Bank*, No. 3:05cv1229-MHT (WO), 2006 U.S. Dist. LEXIS 3221, at *15 (M.D. Ala. Jan. 19, 2006). But the *Davis* court cited neither statute nor case law in making that proclamation. Nor did the court even consider—anywhere in its opinion—Bankruptcy Rule 9027. *Bank of America NA v. Koola*, 2:16-1634-RMG, 2016 U.S. Dist. LEXIS 169165, 2016 WL 7469595 (D.S.C. Dec. 28, 2016), did not address whether the 30 day timeline under § 1446(b) superseded Bankruptcy Rule 9027. Rather, *Koola* properly applied § 1446(b) to removal based on federal question and diversity jurisdiction. *Koola*, 2016 U.S. Dist. LEXIS 169165, at *5–8. Removal through § 1334 was improper because the action was "not related to any bankruptcy proceeding"—not because the motion was untimely. *Id.* at *8. Finally, *In re Asbestos Litig.*, CV No:01-1790-PA, 2002 U.S. Dist. LEXIS 3083, at *9 (D. Or. Feb. 1, 2002), bases its conclusion on a perceived conflict between 28 U.S.C. § 1446 and Bankruptcy Rule 9027, without grappling with the reasons underlying the distinction. *See id.* at *8.

within the First Circuit and the Third Circuit diverges as it relates to the timeliness of J&J's Notice

of Removal—which it does not—the law within the Third Circuit should govern.

## III.    This Court has Subject Matter Jurisdiction as "Related To" Debtors' Chapter 11 Case under 28 U.S.C. § 1334(b)

As more fully outlined in J&J's Venue Motion,[12] federal district courts have "related to"

jurisdiction over Plaintiff's personal injury claims against J&J, and all of the State Court Talc

Claims, under 28 U.S.C. § 1334(b). Plaintiff's arguments to the contrary find no support in the

facts or in the law. Plaintiff relies heavily on *Federal-Mogul* to support her argument that "related

to" jurisdiction does not exist here because "the indemnification right must 'accrue upon the filing

of the civil action in the proceeding related to the bankruptcy case' and be 'clearly established.'"

Pl. Mem. at 9 (quoting *In re Fed.-Mogul Glob., Inc.,* 300 F.3d 368, 372, 382 (3d Cir. 2002)). [13]

*Federal-Mogul* is not this case.

*Federal-Mogul* involved personal injury and wrongful death asbestos claims brought by

tens of thousands of plaintiffs "against various manufacturers and distributors of friction products

. . . as well as against companies that made and sold products that incorporated friction products"

in their own products. *Id.* at 372. There, eleven movants, primarily automobile manufacturers,

sought to remove their cases from state court to the Debtors' bankruptcy proceeding. *In re Fed.-*

*Mogul Glob., Inc.*, 282 B.R. 301, 303 (Bankr. D. Del. 2002). But in asking the related district court

to take jurisdiction, the movants "produced no evidence whatsoever of even a bare agreement to

indemnify running between the debtors and the solvent co-defendants . . . ." *Fed.-Mogul Glob.,*

300 F.3d at 376 (quoting *In re Fed.-Mogul Glob., Inc.*, 282 B.R. at 311). Only one of the many

---

[12] In the interest of economy, J&J respectfully refers the Court to the Statement of Facts and Argument Section II of its Venue Motion for necessary background and preliminary argument on federal courts' jurisdiction over this action.

[13] Plaintiff purports to quote *Federal-Mogul* but actually appears to be quoting, with some error, *In re Lower Bucks Hosp.*, 488 B.R. 303, 314 (E.D. Pa. 2013), aff'd, 571 F. App'x 139 (3d Cir. 2014).

movants "submitted documents that could even plausibly support a claim based on a written indemnification agreement, namely boiler-plate purchase orders that refer to documents containing indemnification language"—documents the court determined were "'too thin a thread with which to pull [the movants] into the [debtors'] bankruptcy.'" *Id.* at 376 (quoting *Fed.-Mogul Glob.,* 282 B.R. at 312). More specifically, the lower court declined to "believe that a manufacturer may write its own invitation to the table of any of its suppliers' bankruptcies by including a boilerplate indemnification clause in its purchase orders," rather than negotiating for contractual indemnities. *Fed.-Mogul Glob.,* 282 B.R. at 312.

Accordingly, the district court determined that "[n]o asset of the estate [was] threatened," and thus the facts did not fit within *Pacor*'s "related to" standard. *Id.* at 311. On appeal, the Third Circuit, "remain[ing] a step away from reaching the merits" and applying a "clear error" standard of review, simply declined to issue a writ of mandamus with respect to the district court's finding that it lacked "related to" jurisdiction on the basis of the tenuous, common law indemnification and contribution rights. *Fed.-Mogul.,* 300 F.3d at 379–84.

The facts here are not similar to *Federal-Mogul*, but rather are readily and critically distinguishable. J&J is the only movant and only J&J's talc products, supplied exclusively by Debtors, are at issue in the State Court Talc Claims. More importantly, as set forth in the Venue Motion, the State Court Talc Claims, including Plaintiff's here, easily satisfy the post-*Pacor* standard for "related to" jurisdiction.

### A.   *Indemnity Agreements*

Plaintiff fundamentally misapprehends the Third Circuit's "related to" jurisdictional analysis. *See* Pl. Mem. at 10. The key inquiry in this analysis is whether an indemnification right "has accrued upon the filing of a civil action," such that it is "not contingent on a factual finding."

*In re Lower Bucks Hosp.*, 488 B.R. 303, 314 (E.D. Pa. 2013), *aff'd*, 571 F. App'x 139 (3d Cir. 2014) (citing *In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 382 (3d Cir. 2002)). *See, e.g.*, *id.* (finding "related to" jurisdiction upon interpreting contracts to impose indemnification obligations triggered "at least in part . . . upon the filing of [a lawsuit]," and thus "not contingent upon a finding of liability"). Unlike the claimed *common law* indemnity and contribution rights described in the Third Circuit's *Pacor*,[14] *Federal-Mogul*,[15] *Combustion Engineering*,[16] and *W.R. Grace*[17] decisions—which did not, and could not, ripen unless and until the plaintiff *prevailed* against the

---

[14] Specifically, the Third Circuit declined to exercise "related to" jurisdiction because "any judgment received by the plaintiff Higgins could not itself result in even a contingent claim against [the debtor]." *Pacor*, 743 F.2d at 995. The same is not true here. Should Plaintiff's case be allowed to proceed, and Plaintiff prevails, J&J would have a crystalized contractual indemnification claim against the Debtors' estates for the value of the judgment, plus defense costs and attorneys' fees.

[15] The Third Circuit approved of the district court's interpretation of *Pacor*, which reasoned that "related-to bankruptcy jurisdiction will not extend to a dispute between non-debtors unless that dispute, by itself, creates at least the logical possibility that the estate will be affected." *In re Fed.-Mogul Glob., Inc.*, 300 F.3d at 381. Here, because the Debtors owe J&J a duty to defend "from and against all liabilities," the continued prosecution of Plaintiff's claims—regardless of the outcome—will affect the Debtors' estates. *See* Dkt. No. 1, Ex. C, Nolan Decl., Ex. 2 at 421-435 (1989 Agreement) § 10; Ex. 3 (2001 Agreement) § 7(a)(iv).

[16] In *Combustion Engineering*, the Third Circuit declined to follow *In re Dow Corning Corp.*, 86 F.3d 482 (6th Cir. 1996)—which found "related to" jurisdiction based on the "identity" of interest created by shared insurance policies and potential claims for contribution against the debtor by non-debtors because "the personal injury liability of both the debtor and non-debtors was based on a single product"—because, unlike in *Dow*, where the debtor either manufactured or contributed key supplies to every breast implant on the market, the personal injury claims against the non-debtors in *Combustion Engineering* arose from "different products, involved different asbestos-containing materials, and were sold to different markets." *In re Combustion Eng'g, Inc.*, 391 F.3d at 230–31. More importantly, unlike here, the *Combustion Engineering* parties "d[id] not cite to any statutory indemnity obligations or express agreements" that would give rise to indemnification obligations with respect to the non-debtors. *Id.* at 230.

[17] *W.R. Grace* clarified the Third Circuit's view of the distinction between common law and contractual indemnities. *See In re W.R. Grace & Co.*, 591 F.3d 164, 172–73 (3d Cir. 2009). There, the court concluded that the relationship between the debtor and the non-debtor was "in one crucial aspect analogous to the relationships in *Pacor*, *Federal-Mogul*, and *Combustion Engineering*"—which all involved potential common law indemnification claims. *Id.* at 172. Specifically, Montana, the non-debtor would "*first* have to be found liable by its state courts and *then* have to successfully bring an indemnification or contribution claim against [the debtor] in the Bankruptcy Court." *Id.* at 172–73. In other words, the non-debtor's claimed indemnification rights were contingent upon a liability finding in the allegedly related case. Unlike an instance where "the only way in which [a] third-party action could have an impact on the debtor's estate is through the intervention of yet another lawsuit," Plaintiff's claims against J&J affect the Debtors' estates right now because the Debtors owe J&J a contractual duty to defend, *See* Dkt. No. 1, Ex. C, Nolan Decl., Ex. 2 at 421-435 (1989 Agreement) § 10; Ex. 3 at 436-452 (2001 Agreement) § 7(a)(iv), as well as a "any cost, loss, damage or expense suffered" as a result of Plaintiff's claims. Dkt. No. 1, Ex. C, Nolan Decl. Ex. 3 at 436-452 (2001 Agreement) § 7(a)(i).

non-debtor defendant—J&J's contractual indemnification claims against the Debtors have already accrued and are ripe for adjudication *now*.

Courts interpreting *Pacor* have found that contractual indemnity rights are fully vested, and unconditionally triggered, when their terms cover expenses or liabilities incurred in actions pre-judgment, regardless of the indemnitee's fault—*e.g.*, when they create a duty to defend,[18] protect against any loss,[19] or obligate the indemnitor to attorney's fees and expenses.[20] For example, in *Lower Bucks*, the district court affirmed—which, in turn, the Third Circuit affirmed— the bankruptcy court's exercise of "related to" jurisdiction because, if the plaintiff was successful in its action against the non-debtor, the debtor was obligated to indemnify the non-debtor for its liability and defense expenses. *See* 488 B.R. at 314. There, the debtor was obligated to indemnify against "any and all claims" arising out of a financing transaction. *See id.* at 315. Critically, however, the indemnity required the debtor to assume and pay for the defense of any claim. *See id.* (excluding only claims for "malfeasance or nonfeasance in office, bad faith, gross negligence, willful misconduct, fraud or deceit"). Therefore, the agreement imposed an indemnity obligation regardless of whether the plaintiff's claims ultimately resulted in a finding of liability. *See id.* at 316.[21] So, unlike the cases upon which Plaintiff relies, the non-debtor's right to indemnification

---

[18] *See In re Millennium Lab Holdings II, LLC*, 591 B.R. 559, 583–84 (D. Del. 2018) ("contractual obligations to advance defense costs . . . before any final determination on the merits" supported "related to" jurisdiction); *Lower Bucks*, 488 B.R. at 316 (obligation to assume the defense was triggered upon the filing of the complaint).

[19] *See Royal Indem. Co. v. Admiral Ins. Co.*, No. 07-2048 (RBK), 2007 U.S. Dist. LEXIS 85991, at *13 (D.N.J. Nov. 19, 2007) (finding "related to" jurisdiction because claims under provision to indemnify and hold harmless against any loss were ripe).

[20] *See LTC Holdings*, 587 B.R. at 38 (indemnification "clearly cover actions pre-judgment, regardless of fault by the [non-debtor indemnitee]" where it included, among other things, attorneys' expenses).

[21] By contrast, one provision—which obligated the debtor to indemnify the non-debtor against any liabilities "which it may incur"—"was the type of inchoate claim precluded by *Pacor*" because the plaintiff would have to prevail in its action *before* the non-debtor could "rightfully demand indemnification" from the debtor. *See Lower Bucks*, 488 B.R. at 316. In other words, the debtor's indemnification obligation *would not arise* until the non-debtor's liability had been *definitively determined* in the plaintiff's action. *See id.*

was *not* contingent upon a factual finding in an action *not involving the bankruptcy debtor*, requiring the commencement of another lawsuit to establish that right. *See id.* at 314, 316. Rather, the debtor's indemnification obligation, at least in part, was triggered upon the filing of the complaint against the non-debtor. *See id.* at 316.

The same is true here. Under the 1989 and 2001 Agreements, the Debtors "shall indemnify, *defend* and hold harmless [J&J] . . . *from and against* all liabilities arising out of *any* violation by [the Debtors] of *any* law, ordinance, regulation or rule." *See* Dkt. No. 1, Ex. C, Nolan Decl., Ex. 2 at 421-35 (1989 Agreement) § 10; Ex. 3 436-52 (2001 Agreement) § 7(a)(iv). Plaintiff alleges that J&J sold cosmetic talcum powder products—the talc in which was mined and supplied by the Debtors—containing asbestos. *See* Pl. Mem. at 1.[22] In other words, based on Plaintiff's *allegations*, the Debtors are required to, among other things, *defend* J&J. Contrary to what Plaintiff argues, this duty to defend this alleged violation of law is not contingent upon any prior factual finding in Plaintiff's case. *See* Pl. Mem. at 9. Rather, J&J's indemnifiable defense costs began accruing on the day Plaintiff filed her complaint. No matter the verdict, each dollar J&J spends defending itself against Plaintiff's claims decreases the portion of the Debtors' estates available to satisfy other creditors, like Plaintiff. The lower court in *Federal-Mogul* specifically recognized that such absolute indemnification rights "plainly establish[] a sufficient nexus between suits against [non-debtors] and the administration of the bankrupt's estate." *In re Fed.-Mogul Glob., Inc.*, 282 B.R. at 309 (citing *A.H. Robins*, 788 F.2d at 1007-08).[23]

---

[22] Plaintiff alleges exposure from the mid-1970s to the present. *See* Dkt No. 1, Ex. A at 7. Plaintiff's alleged usage period directly implicates the CGL Policies as well as the indemnities owed to J&J. And before 1989, Windsor Minerals, Inc. (now known as Debtor Imerys Talc Vermont) supplied cosmetic talc to J&J. *See* Dkt. No. 1, Ex. C, Nolan Decl., Ex. 1 at 341-420 (First Day Decl.) ¶ 12. Pre-1989 liabilities for failure to conform to the specifications "then in effect," where "such variance from such specifications was a material contributing factor in the claim, suit, demand or cause of action being asserted," remain with Debtor ITV. Dkt. No. 1, Ex. C, Nolan Decl., Ex. 2 at 421-435 (1989 Agreement) § 10.

[23] While Debtors' contractual indemnification obligations here meet the most stringent of standards Plaintiff can articulate, it is worth nothing that courts have exercised "related to" jurisdiction on the basis of "automatic"

Finally, Plaintiff mistakenly contends that J&J "*might* have indemnity claims against Debtors *if* it is held liable on Plaintiff's claims." Pl. Mem. at 10. This is wholly inaccurate, and misunderstands the critical distinction between common law indemnity claims routinely found insufficient for jurisdiction and contractual rights to indemnification that have already accrued under their express terms. J&J here asserts that the State Court Talc Claims enjoy "related to" jurisdiction based on contractual indemnity claims, which routinely support jurisdiction under the case law. To show this much, J&J has set forth, with supporting documentation and citation to express language, contractual indemnity rights between J&J and Debtors. Whether contractual disputes remain or defenses may be asserted is of no consequence. *See, e.g.*, *In re W.R. Grace & Co.*, 315 B.R. 353, 357–58 (Bankr. D. Del. 2004) (validity or ambiguity of contract setting forth indemnity is not relevant to determination of "related to" jurisdiction).

## B.  Shared Insurance

Even setting aside the import of J&J's and the Debtors' contractual indemnification obligations, "related to" jurisdiction also exists over this case by virtue of shared insurance between J&J and the Debtors which threatens to deplete the pool of assets in the estate available for creditors. Contrary to Plaintiff's claim, this is no self-serving statement.[24] Indeed, the Debtors

---

indemnification language even where it assumed the plaintiff in the underlying claim against a non-debtor would first have to prevail for the debtor's obligations to impact the estate. *See, e.g.*, *Abrams v. Gen. Nutrition Companies, Inc.*, No. CIV.A. 06-1820 (MLC), 2006 WL 2739642, at *6 (D.N.J. Sept. 25, 2006) ("[Debtor] contractually agreed to indemnify [non-debtor, seller-defendant] for 'all liability, loss and damage including reasonable counsel's fees resulting from the sale or use of the [debtor's] products.' This language automatically creates liability for the [debtor's] bankruptcy estate if [plaintiff] prevails in his claims against [non-debtor, seller-defendant]. Unlike in *Pacor*, there would be no need for a subsequent action seeking indemnification against [debtor] before the bankruptcy estate would be affected."). Similarly, in In re TK Holdings, Inc., the Bankruptcy Court for the District of Delaware exercised "related to" jurisdiction over hundreds of personal injury, wrongful death, and so-called Lemon Law claims pending against non-debtor car manufacturers, rejecting the plaintiffs' "absolute and automatic" indemnification standard and explaining that precedent merely rejects "theories of common law indemnity or joint liability" as sufficient for jurisdiction. Dkt. No 1, Ec. C, Nolan Decl., Ex. 14 at 819-852 (TKH Hr'g Tr.), at 17.

[24] Plaintiff's citation to *Combustion Engineering* is misplaced because, there, the court made no findings with respect to the shared insurance. *See In re Combustion Eng'g*, 391 F.3d at 232. Here, J&J has offered a declarant, described the insurance scheme, and provided an exemplary policy with the relevant language. Further, J&J intends to supplement the record in the District of Delaware with the additional insurance policies, which is exactly what

have represented before the Bankruptcy Court that they "have the right to seek proceeds from various insurance policies issued to J&J and its subsidiaries with total aggregate limits of approximately $2 billion." Dkt. No. 1, Ex. C, Nolan Decl., Ex. 1 at 341-420 (First Day Decl.) ¶ 42. Thus, every dollar J&J spends defending against the State Court Talc Claims depletes a pool of funds that the Debtors have laid claims to, potentially reducing distributions to their creditors.

As set forth in the Denton Declaration, the CGL Policies provide coverage beginning in the 1950s and continuing until 1986, which substantially overlaps with Plaintiff's alleged usage period (mid-1970s to the present). *See* Dkt. No. 1, Ex. C at 332-335 (Denton Declaration) ¶ 6. As noted above, the Debtors contend that these policies have limits of approximately $2 billion. And, based on his independent, prepetition diligence, the Debtors' proposed Future Claimants' Representative agrees.[25] Therefore, it is the Debtors and the proposed fiduciary representing the interests of future claimants that have put the CGL Policies at issue. Those policies, as described in the Denton Declaration, provide coverage to Johnson & Johnson, as well as certain affiliated or subsidiary companies as named insureds or insureds. *See* Dkt. No. 1, Ex. C at 332-335 (Denton Declaration) ¶ 8.[26] From its formation until 1989, Windsor Minerals, Inc. was wholly owned by J&J. *See id.* The scope and terms of the insurance are laid out in the policies, but it is the CGL

---

[25] *See Imerys Talc America, Inc. v. Cyprus Amax Minerals Co.*, Adv. Pro. No. 19-50115 (LSS) (Bankr. D. Del.) [Dkt. No. 25] ¶ 19 ("Based on his prepetition diligence, the Proposed FCR understands that the Debtors also have the right to seek the proceeds from various insurance policies issued to . . . J&J and its subsidiaries. The . . . J&J policies have total aggregate limits of approximately . . . $2 billion.").

[26] *See, e.g.*, Dkt. No. 1, Ex. C, Nolan Decl., Ex. 16 (Primary Aetna) § II ("Each of the following is an Insured under this insurance to the extent set forth below: (a) the Named Insured, which shall read: Johnson & Johnson and any affiliated, associated or subsidiary company in any tier as now or hereafter may be formed, acquired or constituted or any other company over which Johnson & Johnson has or acquires active control or management, so long as Johnson & Johnson or such affiliated, associated or subsidiary company, or any combination thereof, owns in excess of 50% of the stock of such company.")

happened in *In re Montreal Maine & Atl. Ry., Ltd.*, No. 1:13-MC-00184-NT, 2014 WL 1155419, at *3 (D. Me. Mar. 21, 2014) ("In reply, the Movants attached a number of documents purporting to establish the shared insurance and indemnification obligations of the Railway to some of the Non-Debtor Defendants.").

insurers—not J&J, the Debtors, or the plaintiffs—who will decide entitlement to coverage. This is why Plaintiff's argument that J&J has failed to establish that coverage applies to Plaintiff's claims must fail. *See* Pl. Mem. at 10-11. *First*, that is not the standard for conferring "related to" jurisdiction. *See, e.g.*, *In re W.R. Grace & Co.*, 386 B.R. 17, 28–29 & n.45 (Bankr. D. Del. 2008) (exercising related to jurisdiction even though claim to shared insurance was contested). *Second*, J&J is not the Debtors' insurance lawyers. If it is later determined that the Debtors are entitled to some of the CGL Policies' proceeds, but those proceeds have already been exhausted by J&J, it will decrease the distributions available to claimants against the Debtors' estates.

## C.       *Identity of Interests*

Given that the lawsuits involve the same products containing the Debtors' talc, J&J's and the Debtors' shared identity of interests further supports jurisdiction. The case law Plaintiff wields confirms the decisive impact of these additional bases for jurisdiction.

For example, Plaintiff misstates the Third Circuit's analysis in *Combustion Engineering* by asserting that "'the identity of interest' is absent where third-party claims involving asbestos or asbestos-containing products supplied by the debtor "did not directly result in liability for the debtor.'" Pl. Mem. at 11. That decision did not turn on the fact that asbestos exposure was alleged; rather, due to the nature of the allegations, the co-defendants simply did not have unified interests. *See In re Combustion Eng'g*, 391 F.3d at 231 (asbestos-related personal injury claims asserted arose "from different products, involved different asbestos-containing materials, and were sold to different markets")[27]; *In re W.R. Grace & Co.*, 591 F.3d at 173 ("Montana, of course is not even a

---

[27] For example, the asbestos-related claims against the debtor arose from exposure to asbestos insulation used in boilers manufactured by the debtor for use in power plants and industrial facilities. *See In re Combustion Eng'g*, 391 F.3d at 231. The asbestos claims against the non-debtors arise from exposure to (i) water heaters manufactured by Lummus that included asbestos-containing gaskets and (ii) acoustical plaster containing asbestos manufactured by Basic. *See id.* According to the Third Circuit, "[t]hese distinct products and customers d[id] not establish a 'unity of interest'

private entity, let alone an entity in the business, as Grace is, of producing asbestos products. Instead, Montana's potential liability is based on an independent legal duty that Montana's Supreme Court has decided that the State, as a sovereign, owes to its people, namely, a governmental duty to warn about hazards at Grace's site."). Further, this is not a so-called traditional asbestos case, where the plaintiff has no idea which entity manufactured the asbestos to which he or she was allegedly exposed. Because the Debtors have historically been the sole supplier of cosmetic talc to J&J, this case is much more like *Dow* where "every single breast implant involved [the debtor] as either the primary manufacturer or the supplier of the key product input." *In re Combustion Eng'g*, 391 F.3d at 231 (describing *In re Dow Corning Corp.*, 86 F.3d 482 (6th Cir. 1996)).[28] Nothing in *Combustion Engineering* suggests that *Dow*'s reasoning cannot, or should not, apply simply because Plaintiff alleges asbestos exposure. The alleged personal injury liability of both the Debtors and the non-debtors is based on a single product originating with the Debtors: Johnson's cosmetic talcum powder. *See In re Combustion Eng'g*, 391 F.3d at 231. The State Court Talc Claims here arise out of a single type of product manufactured by J&J and supplied exclusively by Debtors, sold to the same market allegedly incurring the same types of injuries. Thus, they are eminently distinguishable from the claims at issue in *Combustion Engineering* and *W.R. Grace*.

---

between [the debtor] and the non-debtors." *Id.* Here, on the other hand, Plaintiff's claims arise from exposure to Johnson's Baby Powder, which is the Debtors' 99% talc.

[28] The same is true of *A.H. Robins v. Piccinin*, 788 F.2d 994 (4th Cir. 1986), which involved 5,000 suits alleging personal injury allegedly sustained by the use of an intrauterine device known as the Dalkon Shield. Contrary to Plaintiff's claim, *Combustion Engineering* distinguished *A.H. Robins* on the grounds that *A.H. Robins* involved express indemnification obligations and the debtor and non-debtors were co-insureds under the operative insurance policies, both of which are present here. *See id.* at 233.

**IV.    This Court Should Not Conduct an Abstention Analysis, and Any Such
Analysis Disfavors Abstaining Here**

*A.        The Delaware District Court is the Proper Court to Analyze Abstention*

As explained above, under § 157(b)(5), it is the Delaware District Court's exclusive

mandate to set venue for Plaintiff's claims against J&J. *See Hopkins v. Plant Insulation Co.*, 342

B.R. 703, 708 (D. Del. 2006) (the Delaware District Court recognizing, under § 157(b)(5), its "sole

authority to determine the appropriate venue for [actions alleging] personal injury tort and

wrongful death claims against, among others, [non-debtors over which the court has 'related to'

jurisdiction]" where related bankruptcy is pending in that district); *see also A.H. Robins*, 788 F.2d

at 1011 ("Section 157(b)(5) . . . expressly confers on the district court sitting in bankruptcy and

having jurisdiction of the bankruptcy proceedings the power to fix the venue of any tort case

against the debtor pending in other districts."). Thus, should the Delaware District Court find that

it has jurisdiction, remand will be inappropriate unless *that* court chooses, against a "strong

legislative presumption in favor of transfer," to abstain following abstention analyses. *Nutraquest,*

*Inc.*, 2004 U.S. Dist. LEXIS 29143, at *43. Accordingly, because J&J has moved under § 157(b)(5)

to fix venue in the Delaware District Court, it is the Delaware District Court rather than this Court

that should engage in any abstention analyses or otherwise consider remand issues in the first

instance. *Cf., e.g.*, *Hopkins*, 342 B.R. at 710; *New England Compounding*, 496 B.R. at 270.

*B.        Mandatory Abstention is Inapplicable Here Because 28 U.S.C. § 157(b)(4)
Exempts Personal Injury and Wrongful Death Claims*

Mandatory abstention is inapplicable in this case. Although Plaintiff relies on 28 U.S.C.

§ 1334(c)(2), Plaintiff overlooks the exemption Congress created in 28 U.S.C. § 157(b)(4).[29]

Under § 157(b)(4), "non-core proceedings under section 157(b)(2)(B) of title 28, United States

---

[29] Accordingly, the three pages that Plaintiff devotes to analyzing core and non-core proceedings and mandatory abstention is of no moment. *See* Pl. Mem. at 13-15.

Code, shall not be subject to the mandatory abstention provisions of section 1334(c)(2)." In turn, § 157(b)(2)(B) describes proceedings that may result in "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11."

Courts read the § 157(b)(4) exemption broadly, especially given Congress's recognition of the "potentially deleterious effects on a debtor's estate" that may be caused by "the unpredictable and substantial verdicts that are often produced in personal injury tort and wrongful death claims." *Beck v. Victor Equip. Co.,* 277 B.R. 179, 180–81 (S.D.N.Y. 2002). Thus, the exemption properly applies to personal injury or wrongful death claims against a debtor's indemnitee, like Plaintiff's claims against J&J. *See, e.g., New England Compounding,* 496 B.R. at 270–72 ("If the underlying harm giving rise to the estate's potential liability involves personal injury or wrongful death, the claim against a third-party concerning that harm is, in substance, a 'personal injury tort or wrongful death claim against the estate' and therefore covered by the exception in § 157(b)(2)(B)."); *Abbatiello v. Monsanto Co.,* No. 06 CIV. 266 (KMW), 2007 WL 747804, at *3 (S.D.N.Y. Mar. 8, 2007) ("Here, the exception to mandatory abstention also applies to litigation against [non-debtors] Pharmacia and New Monsanto, because [debtor] Solutia is obligated to indemnify Pharmacia and New Monsanto for any judgment awarded against them. Mandatory abstention is thus inapplicable to this action.").[30]

---

[30] *See also Hopkins*, 342 B.R. at 709–10 (mandatory abstention does not apply, per § 157(b)(4), "to the liquidation of personal injury tort or wrongful death cases," including those not "against the debtor or the debtor's property"); *Nutraquest, Inc.*, 2004 U.S. Dist. LEXIS 29143, at *44 (concluding mandatory abstention does not apply to cases, including against non-debtors, transferred pursuant to § 157(b)(5)); *Berry v. Pharmacia Corp.*, 316 B.R. 883, 889 (S.D. Miss. 2004) ("[T]he rationale for exempting personal injury and wrongful death claims against the debtor's estate from the mandatory abstention provision applies fully to the claims against [non-debtor defendant].").

### C.     This Court Should Decline to Permissively Abstain

Permissive abstention is also unwarranted. Although a district court may abstain "in the interest of justice, or in the interest of comity with State courts or respect for State law," 28 U.S.C. § 1334(c)(1), courts have questioned whether permissive abstention is proper in connection with a § 157(b)(5) transfer because of its statutory purpose.[31] Accordingly, permissive abstention should be "rarely invoked" in circumstances like these. *Beck*, 277 B.R. at 181.

Plaintiff argues that the Court should permissively abstain to prevent duplication of judicial effort. However, here, the efficient and effective administration of the debtors' estate requires consolidation of the thousands of cases implicating indemnification claims against the debtors and shared insurance with the debtors. J&J's pursuit of a centralized venue to adjudicate crucial issues for the Debtors' creditors serves federal interests through efficiency and the conservation of judicial effort. In contrast, there was no indication in *Haber* or *Messerlian* that the consolidation of the plaintiffs' claims with other similar claims (to the extent there were any) would serve federal interests. *See Haber v. Massey,* 904 F. Supp. 2d 136 (D. Mass. 2012); *and Messerlian v. A.O. Smith Corp.*, C.A. No. 09-393S, 2009 U.S. Dist. LEXIS 123982 (D.R.I. Dec. 29, 2009) (finding Defendant removing  the claims against it failed to identify any specific or compelling federal interest which would be furthered by severing the case.)

Plaintiff acknowledges that the permissive abstention analysis under 1334(c)(1) is "essentially identical" as an equitable remand analysis under section 1452(b). Pl. Mem. at 16; *see In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 334 (S.D.N.Y. 2003). Accordingly, the same

---

[31] *See Pan Am.*, 950 F.2d at 845 (permissive abstention would "contraven[e] the legislative history"); *Beck*, 277 B.R. at 181 (discretionary abstention would "undercut the statutory purpose of § 157(b)(4)"); *see also Nutraquest, Inc.*, 2004 U.S. Dist. LEXIS 29143, at *43 (recognizing the "strong legislative presumption in favor of transfer under § 157(b)(5) . . . [where] federal courts have a virtually unflagging obligation . . . to exercise" their jurisdiction).

equitable considerations that overwhelmingly support denial of the Remand Motion under section 1452(b), *see infra* Section V, also disfavor permissive abstention under section 1334(c)(1).[32]

## V.      Considerations Under Equitable Remand Support Denying Plaintiff's Remand Motion

This Court need not expend its resources in deciding the Remand Motion until the Delaware District Court rules on the Venue Motion. But if this Court does decide to consider the Remand Motion prior to a ruling, it should not exercise its discretion under § 1452(b) to remand this action because equitable considerations favor centralized adjudication of the Talc Claims in the District of Delaware. Equitable grounds for remand under § 1452(b) have been interpreted to include a "preference for having an entire dispute resolved in one court." 2 Collier on Bankruptcy ¶ 3.07[5], at 83–85 (Lawrence P. King et al. eds., 15th. ed. rev. 1996). In addition, courts consider the following a non-exhaustive list of factors to determine whether remand is appropriate: (1) whether remand would prevent uneconomical use of judicial resources; (2) what effect remand would have on the administration of the bankruptcy estate; (3) whether the case involves questions of state law better addressed by state court; (4) comity; (5) prejudice to involuntarily removed parties; (6) whether remand will lessen the possibility of inconsistent results; and (7) the expertise of the court in which the action originated. *See, e.g.*, *In re Riverside Nursing Home*, 144 B.R. 951, 956 (S.D.N.Y 1992); *Williams v. Shell Oil Co.*, 169 B.R. 684, 692–93 (S.D. Cal. 1994).

Here, the flood of personal injury and wrongful death claims arising out of alleged exposure to the Debtors' talc caused the filing of the Debtors' Chapter 11 Case. As explained, these claims' resolution will impact the bankruptcy estates, and are thus "related to" Debtors' bankruptcy. Therefore, they will also impact the overall theory, timing, and implementation of any chapter 11

---

[32] J&J also refers the Court to its Venue Motion, Argument III.B, for a more extensive discussion of the permissive abstention factors under § 1334(c)(1).

plan. With this in mind, J&J removed this action and invoked § 157(b)(5) in pursuit of a centralized venue for adjudication of the key threshold issues, that will result in equitable and uniform outcomes on those threshold issues for the Debtors' creditors—including the thousands of plaintiffs prosecuting similar claims and actions across the country—the Debtors' themselves, and J&J. Such adjudication will promote efficiency and preservation of judicial resources.

These considerations weigh strongly against abstention. *See Montreal Maine & Atl. Ry., Ltd.,* 2014 WL 1155419, at *12 ("[J]udicial economy and efficiency concerns . . . though insufficient to create bankruptcy-relatedness jurisdiction, do weigh in the determination to retain jurisdiction."). J&J's goal, through removal and the Venue Motion, is to transfer this action and all State Court Talc Claims to a single court with the resources to prevent disparate outcomes by, for example, holding a single general causation hearing, setting bellwether trials, and/or sending cases to federal court venues around the country for expedited trials when appropriate. Remand would frustrate this equitable result. *See Nutraquest*, 2004 U.S. Dist. LEXIS 29143, at *45 (finding abstention improper because "[t]he centralization of all personal injury and wrongful death claims [including those against non-debtors] will assist in 'developing a reasonable plan of reorganization' or orderly plan of liquidation 'and at the same time assure fair and non-preferential resolution of outstanding claims.'") (quoting *In re Dow Corning*, 86 F.3d at 496); *New England Compounding*, 496 B.R. at 273 (finding abstention would be "counterproductive" to judicial efficiency and the fair and efficient distribution of the estate); *Pan Am. Corp.,* 950 F.2d at 845 (describing the "manifest purpose of [§] 157(b)(5)" as "consistent with Congress' desire to eliminate the confusion, delay and inefficiencies associated with the Bankruptcy Act's limited jurisdictional scheme."). Thus, factors (1), (2), and (6) overwhelmingly support denial of the Remand Motion and outweigh any countervailing considerations.

While it is true that Plaintiff's claims involve questions of state tort law, the state law and comity considerations contemplated in factors (3), (4), and (7) also do not favor remand. By enacting 28 U.S.C. § 157, Congress specifically "singled out" personal injury claims, which are "almost always governed by state law," "as the very ones it wanted transferred." *In re Twin Labs.*, 300 B.R. at 841. Indeed, the thousands of personal injury claims against the Debtors, which will be handled in Delaware, similarly involve issues of state law. The District of Delaware to which J&J seeks to transfer Plaintiff's claims is best equipped to address them, collectively with the State Court Talc Claims, in light of the fact that such claims are proceeding all across the country. Moreover, remand based on predominance of state law questions is only warranted where "a particularly unusual question" or "unsettled questions" of state law exists. *In re Pan Am. Corp.*, 950 F.2d 839, 846 (2d Cir. 1991). Plaintiff's claims consist of straightforward product liability, strict liability, and negligence claims. Plaintiff's state court complaint, Dkt. No. 1, Ex. A, asserts causes of action for negligence, breach of expressed and implied warranties, conspiracy, undertaking of special duty, and strict liability. None of the law is "difficult, unsettled, or unfamiliar to a federal court." *See In re Twin Labs.*, 300 B.R. at 841. Moreover, while Plaintiff's state court claims confer jury trial rights—a factor sometimes considered in abstention/remand analyses—there is no threat to those rights here; the very provision under which J&J has filed its Venue Motion fixes venue for where "claims shall be tried." 28 U.S.C. § 157(b)(5) (emphasis added). To the extent comity bears significant weight in the analysis, it supports denial of the Remand Motion pending the District of Delaware's decision on the Venue Motion.

As for factor (5), while Plaintiff argues that she will be prejudiced if her case is not remanded, she fails to appreciate that there are 2,400 State Court Talc Claims brought by plaintiffs also awaiting their day in court, and nearly all of them have a cancer diagnosis. Declining to

remand and allowing the orderly transfer of the State Court Talc Claims, including Plaintiff's, to

the Delaware District Court under §§ 157(b)(5) and 1334(b) offers the best chance for an efficient

adjudication of *all* plaintiffs' claims. Thus, Plaintiff's condition should not override the purposes

of § 157(b)(5) and the efficient operation of the courts. *Cf., e.g.*, *W.R. Grace & Co.*, 386 B.R. at

35-36 (expanding a preliminary injunction to bar prosecution of pending actions against non-

debtor railroad over whom the court found "related to" jurisdiction, and weighing the alleged

hardship to "sick and dying" claimants caused by expanding the injunction, but finding that "[t]he

diversion of time, effort and resources that would be required if the [actions] proceed would further

delay the reorganization process, and implicate estate property," and noting that the parties were

permitted to pursue testimony preservation procedures upon application).[33] On the other hand, if

one accepted the argument that Plaintiff's *in extremis* condition warranted remand rather than

removal and transfer to one efficient forum, it would follow that multidistrict litigation of such

claims is improper for the same reason. Yet over 80% of the talc cases against J&J have already

been consolidated in an MDL. *See* Case No. 3:16-md-02738 (D.N.J.). By establishing this MDL,

the federal courts have rejected the argument that certain plaintiffs' *in extremis* condition requires

thousands of cases to be decided separately, and potentially inconsistently. *See also, e.g.*,

*Abbatiello*, 2007 WL 747804, at *1, 4-5 (declining to equitably abstain and remand plaintiffs'

claims alleging defendants produced chemicals causing "cancer, liver disease, and other serious

illnesses" where debtor and non-debtor defendants were "inextricably intertwined" and remand

would harm administration of debtor's estate); *Berry*, 316 B.R. at 889 (similar facts and reasoning);

---

[33] Moreover, for plaintiffs like Ms. O'Riorden who allege their *in extremis* condition puts them at risk of missing their trial if their claims are transferred, J&J offers *de bene esse* depositions, and also anticipates that if the State Court Talc Claims are transferred, the Delaware District Court in its discretion will consider setting or transferring cases for expeditious jury trials by *in extremis* application. Further mitigating any risk of prejudice, since filing its Venue Motion, J&J has met and will continue to meet pre-trial deadlines.

*W.R. Grace & Co.*, 386 B.R. at 33-35 (relative hardship of harm to debtor through related claims against non-debtor outweighed hardship to asbestos personal injury plaintiffs).

## CONCLUSION

For the foregoing reasons, as well as those set forth in J&J's Notice of Removal and Venue Motion, this Court should deny Plaintiff's Remand Motion or, in the alternative, hold it in abeyance pending the forthcoming decision from the Delaware District Court on the Venue Motion.

Dated: May 16, 2019

Respectfully submitted,
Johnson & Johnson
By its attorneys,

*/s/ Daniel P. McCarthy*
Daniel P. McCarthy, BBO #651559
MANNING GROSS + MASSENBURG LLP
125 High Street, 6th Floor
Oliver Street Tower
Boston, MA  02110-3536
Telephone:  (617) 670-8800
Facsimile:  (617) 670-8801
Email: DMcCarthy@mgmlaw.com

## CERTIFICATE OF SERVICE

I, Daniel P. McCarthy, counsel for Defendant, Johnson & Johnson, hereby certify that a true and accurate copy of the above document was filed electronically on the Court's CM/ECF system on May 16, 2019.  Notice of this filing will be sent to all counsel of record via the Court's ECF system.

*/s/ Daniel P. McCarthy*
Daniel P. McCarthy